EDMUND G. SUTHERLAND, as Supervisor, etc., Respondent, *v.* JAMES CARR et al., Executors, etc., Appellants.

In a bond given by the supervisors of a town of Westchester county, under the provision of the statute requiring every supervisor to execute and deliver to the town clerk of his town a bond conditioned for the faithful discharge of his duties, etc. (§ 2, chap. 534, Laws of 1866, as amended by § 1, chap. 721, Laws of 1868), the person holding the office of town clerk at the time was named as obligee, he being described as "town clerk," and the penal sum being made payable "to the said town clerk or his successor in office." In an action upon the bond, *held*, that the bond was not to the individual, but to the officer; and so was in compliance with the requirements of the statute and was valid.

Also *held*, that the action was properly brought in the name of the supervisor of the town.

The town collector made return to H., the predecessor of M., the principal obligor, of uncollected State and county taxes, as prescribed by the act of 1874 (§ 1, chap. 610, Laws of 1874.) H., under the authority given by said act (§ 2), raised the money upon a certificate of indebtedness of the town, and paid it over to the county treasurer, and thereafter took the steps as prescribed by the act to raise moneys to pay the indebtedness; these were received by him and paid over to M., and moneys were received by the latter for lands bid in, by and for the town. The amount of unpaid taxes was also, at the request of H., put by the board of supervisors in the next annual tax levy, and was collected and paid over to M. *Held*, that all of said moneys, although in excess of the needs of the town, were received by M. officially, and upon his failure to account for or pay over the same, that the sureties upon his bond were liable.

(Argued March 11, 1881; decided April 19, 1881.)

SICKELS — VOL. XL.   14

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 13, 1880, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought by plaintiff as supervisor of the town of White Plains, Westchester county, upon a bond given by Stephen S. Marshall, former supervisor of said town, as principal, and the others, defendants, as sureties. One of the defendants, Gilbert S. Lyon, having died, his executors, James Carr and Wesley Lyon, were substituted as defendants, the action was ordered to be severed, and to proceed against them separately. The body of the bond, omitting the names of the obligors, is as follows :    *    *    *

"Know all men by these presents:  That we are held and firmly bound unto A. Jackson Hyatt, town clerk of said town of White Plains, in the penal sum of $15,000, to be paid to the said town clerk, or his successors in office, for which payment well and truly to be made we bind. ourselves, our heirs, executors, administrators, and assigns, jointly and severally, firmly by these presents.  Sealed with our seals, and dated the 14th day of April, A. D. 1877.

Whereas the above bounden Stephen S. Marshall was on the 27th day of March, 1877, duly elected supervisor of the town of White Plains, in the county of Westchester;  Now, the condition of this bond is such that if the said Stephen S. Marshall shall faithfully discharge his duties as such supervisor and shall well and truly keep and pay over and account for all moneys belonging to his town, and convey into the hands of his successor as such supervisor without fraud or delay, then this obligation to be void, otherwise to be in full force and virtue."

The court found among other things that the obligee Hyatt was, at the time the bond was executed, the town clerk of said town; that the bond was approved by the boards of town auditors and town officers; that Marshall, at the expiration of his term of office, had in his hands $11,468.77, balance of

money received by him during his term, of which balance the sum of $1,548.24 was levied and collected for highway purposes, and for the relief of the poor of the town, and was paid over to Marshall as supervisor, instead of to the highway commissioners and the overseer of the poor, which balance Marshall neglected and refused to account for and pay over, and appropriated the same to his own use. Judgment was directed and entered for said balance, less said sum of $1,548.24, with interest.

It appeared that in 1876 the collector of taxes of said town made return to Horton, the predecessor of Marshall in the office of supervisor, of unpaid taxes to the amount of $5,618.15, which was due from the town to the county treasurer. To make up this sum, Horton borrowed $5,000, upon a certificate of indebtedness of the town, issued by him as supervisor under the provisions of chapter 610, Laws of 1875. This sum, at his request, was included by the board of supervisors in the annual tax levy for the next year. There was also included $1,230.18 to pay for lands which had been bid in for the town; $37.60 for erroneous assessments, and $2,101.08 for·rejected taxes. These were collected in part and paid to Marshall. Horton paid over to Marshall $4,396.59, which included tax sales, $1,209.13, unpaid taxes and moneys paid to him after return of collector's warrant, $253.28. Further facts appear in the opinion.

*Calvin Frost* for appellants. The addition of the words "town clerk" at the end of Hyatt's name in the bond is a mere *descriptio personæ*. (*Merritt* v. *Seaman*, 2 Seld. 168; *Sheldon, Adm'r*, v. *Hay*, 11 How. Pr. 11, 14.) If this bond was required to be given to the town clerk as obligee and has been so given, then the action is not well brought in the name of the supervisor, as he was not party to it. (*Sanford* v. *Sanford*, 2 Day. 559; *Sanders* v. *Filly*, 12 Pick. [Mass.] 554; Dicey on Parties to Action, rule 12, p. 117; *People* v. *Holmes*, 5 Wend. 197; *Cummings* v. *Morris*, 25 N. Y. 625.) Independently of the form of the bond this action cannot be maintained

in the name of the supervisor. (R. S., part 1, chap. 11, tit. 4, art. 1, § 1; Laws of 1868, chap. 721, § 2; R. S., part 1, chap. 2, tit. 5, §§ 1, 2; *Hagadown* v. *Raux,* 72 N. Y. 583; *Town of Guilford* v. *Cooley,* 58 id. 116; 1 R. S., part 1, chap. 11, tit. 5, §§ 1, 2; *Hathaway* v. *The Town of Homer,* 5 Lans. 267, 273; *Palmer* v. *Plank-Road Co.,* 1 Kern. 390, 391; 54 N. Y. 655; *People* v. *Pennock,* 60 id. 431.) The supervisor was only authorized to receive moneys belonging to the town. (R. S., part. 1, chap. 11, tit. 4, art. 1, § 1.) The sureties are not liable for any other moneys than those which the supervisor is so authorized to receive. (*The People* v. *Pennock,* 60 N. Y. 421.) While in the construction of statutes the intention of the law-making power must be ascertained, and such construction, consistent with legal rules, given as will prevent the defeat of the object of the act, still these rules are only applicable to cases in which the words are doubtful or obscure, and the meaning of the legislature cannot be gathered from them. (*Everett* v. *Wells,* 2 Scott [N. C.], 531; Dwarris on Statutes [Potter's ed.], 203; *Raux* v. *Stoke Damsrel,* 7 B. & C. 569; *Douglass* v. *Eyre,* Gilpin, 149; *United States* v. *Haun,* 8 Am. L. Reg. 664, etc.; *United States* v. *Ten Cases of Goods,* 2 Paine's C. C. 176; Maxwell's Interpretation of Statutes, 216, 218; *McCloskey* v. *Cromwell,* 1 Kern. 601; *Newell* v. *The People,* 3 Seld. 973; Hurlstone on Bonds [9 Law Library], 108.) None of the moneys which came to the hands of Marshall belonged to the town, although collected from its tax payers, the town in its corporate capacity had not title to them. (*Cornell* v. *The Town of Guilford,* 1 Den. 170; *Lorillard* v. *The Town of Monroe,* 1 Kern. 392; *Gaylor* v. *Herrick,* 42 Barb. 79; *Gallatin* v. *Loucks,* 21 id. 578; Potter's Dwarris on Statutes, 272.)

*Elisha P. Ferris* for respondent. The action is properly brought in the name of the plaintiff as supervisor. (3 R. S. [5th ed.] 774, §§ 92, 93; Code of Civil Procedure, § 1926; *Sup'vr of Galway* v. *Stimson,* 4 Hill, 136; *Hathaway as*

*Sup'vr of the Town of Solon* v. *The Town of Homer,* 5 Lans. 273; *The Town of Chautauqua* v. *Gifford et al.,* 8 Hun, 152; *Town of Guilford* v. *Cooley,* 38 N. Y. 121; *The Town of Chautauqua* v. *Birdsall,* 3 N. Y. W. Dig. 123.) An action can be maintained in the name of a town on a liability to it, only in cases where town officers are not specially authorized by law to sue in their name of office, or where the town is specially authorized to sue in its name. (*Town of Duanesburg* v. *Jenkins,* 46 Barb. 294–310; *The Town of Chautauqua* v. *Gifford et al.,* 8 Hun, 152; 58 N. Y. 121.) The bond in suit was properly executed to A. Jackson Hyatt, who was then the town clerk of the said town. (Laws of 1866, chap. 534, § 2, as amended by chap. 721 Laws of 1868.) The oath of office of Marshall, as supervisor, and the official oaths of the town auditors — Messrs. Smith, Ferris, and Brown — were properly taken and certified by and before A. Jackson Hyatt, town clerk. (1 R. S. [5th ed.] 825, § 36.) The defendants are liable for the several sums paid to Marshall, arising from the appropriations levied and collected by authority of the board of supervisors to pay the " Certificate of Indebtedness," " for lots bid in for the town," and for " rejected taxes." (Laws of 1874 chap. 610 §§ 2, 3; 1 R. S. [5th ed.] 839, §§ 11, 12. Marshall's sureties must be presumed to have known the law, and the duties it imposed upon him, (*People* v. *Pennock,* 60 N. Y. 425; *U. S.* v. *Price,* 9 How. 83.)

FOLGER, Ch. J. *First.* The first· point made by the appellants is, that the bond sued upon is invalid. The supposed invalidity is found, in that the bond reads in the penalty, that the obligors " are held and firmly bound unto A. Jackson Hyatt, town clerk of the said town of White Plains, in the penal sum, etc." This, it is said, makes it a bond to Hyatt individually, and not officially as town clerk; and that the addition of the words " town clerk " to his name is a mere " *descriptio personæ.*" But it is, that. It does describe the person. It describes him, Hyatt, as the town clerk of the town of White Plains. Then he held at that time the town

office that would make him a proper official recipient of the bond to be made by the supervisor of that town. (Laws of 1866, vol. 2, 1146, chap. 534, § 2 ; id. 1868, vol. 2, p. 1628, ch. 720, § 1.) If there was nothing else in the bond, it might be that the law would hold it to be a bond to Hyatt in his own right, and not to him in an ·official capacity, to be taken and held by him for the benefit of his constituent town.

The cases, which speak of phrases annexed to the name of men, as being merely words of description, and as expressing no peculiar legal capacity or relation, have mostly arisen on the construction of pleadings. And it has been held, that where the plaintiff names himself in his process or pleading, as being executor, administrator or assignee, without introducing any words denoting that he sued as such, such phrase is a mere description of the person, and does not affix to the plaintiff any character or capacity in which peculiarly he brings that action. And the same has been applied to the statement of the parties to a written instrument. This, however, is not so rigid a rule, as not to yield to the evident purpose of a pleading or an instrument. And if there can be plainly gathered from the whole of it, that a particular character or capacity is to be attached to the person named, he will be deemed to hold it, in his relation to the transaction. If in a pleading, the promises or other obligations, or the duties, are alleged as those of or to the body that the person named represents, the pleading is looked upon as one for or against that body. So it must be with an instrument in writing. · In the case in hand, the language of the whole bond, and its evident purport derived therefrom, leaves no doubt. . It does say that the obligors are held and firmly bound unto A. Jackson Hyatt, town clerk of said town of White Plains ; but it also says that the penal sum is to be paid not to the said Hyatt, the person, but to the said town clerk, the officer, or to his successors in office. And the condition to the bond is that the principal obligor shall faithfully discharge his duties as supervisor of that town, and well and truly keep, · and pay over and account for, all moneys belonging to his town, and coming into his hands, to his successor in the office

of supervisor. Such an instrument would ill sustain an averment of a bond to A. Jackson Hyatt, the individual, in his own right. We think that there is nothing in the first point of the appellants.

*Second.* The second point is like unto the first; that it is not a compliance with the statute, to make the bond run to an individual as obligee, instead of to an official. We have shown that the bond is not to the person, but to the officer. The statutes above cited require that the bond shall be executed and delivered to the town clerk of the town. Delivery means the manual passing from the hand of the bondsman to the hand of him who is to receive it, and the town clerk is designated by the statute as the officer who is to take delivery. Delivery, technically, is a part of execution; which latter term is made up of the formal signing, sealing and delivery of the writing. But in common parlance, the writing out, the signing and sealing are what is meant as the executing, and the delivery is looked upon as a separate act. These statutes require that both acts be done to the town clerk. And this bond complies with the statutes, when it runs in its terms to the town clerk, and is delivered to him who for the time being fills that office.

*Third.* The third point is, that this action was not well brought in the name of the supervisor of the town, as he was not a party to the bond. The whole matter is a creature of positive law. The towns are erected by law, and their powers and rights and duties prescribed. The officers of them, all the officers whose official acts are a part of this transaction, are creatures of law, and have their functions designated. Though the bond is formally to the town clerk, it is really and practically for the behoof of the town. The town must act through an agent in taking it, and the town clerk is specified as the agent, and the bond is not his. The town owns it, and has all the beneficial interest in it. All these statutes must be laid side by side with each other. Those which permit a town to have and hold an obligation, with those that permit it to sue for a right; and when a right given by one law needs to be en-

forced, the mode of enforcement is to be sought in the other. The statute gives, impliedly, authority to the town clerk to take the bond for his town. That statute does not give him authority to sue for a breach of the condition of it. Is, therefore, the town to be remediless? Nay; other statutes have given it the power and the capacity to sue for a right. Whenever a cause of action exists between a town and an individual, proceedings at law or in equity are provided for settling the same. (1 R. S. 356, § 1.) The town shall sue therein, by its own name, except when town officers are authorized to sue by their name of office for the benefit of the town. (Id. 357, § 2.) Supervisors are authorized thus to sue to enforce any liability to the body which they represent. (2 R. S. 473, §§ 92, 93; New Code, § 1926; *Town of Lewis* v. *Marshall*, 56 N. Y. 663; affirming S. C. in court below, *Town of Guilford* v. *Cooley*, 58 N. Y. 116–121.) Such a bond as this, is given to a town as a security for the just use and application of the moneys raised for its benefit. In a sense the moneys are its moneys. The duty to properly use, expend, or account for and pay over to other officers is a duty owing to that aggregation of citizens designated a town in the political divisions of the State. It is a liability to that town. The supervisor of the town is authorized to sue to enforce that as well as other liability to the town. The first section of the act of 1866 (*supra*) does not stand in the way of this, as is shown in 58 N. Y. (*supra*). This action is not against a supervisor on an accounting under that section, nor for a false account, nor for neglecting to account, nor for converting money or securities to his own use coming into his hands by virtue of his office. In such case the action is to be in the name of the town, by the express provision of the first section, and is thereby excepted from 2 R. S. 473, § 92 *et seq.* (*Hagadorn* v. *Rauk*, 72 N. Y. 583.) But here is an express obligation in writing, from the person holding the office and others as his sureties, which raises an express liability to the town, and takes the case within the scope of the Revised Statutes last cited. The rulings in 56 and 58 N. Y. (*supra*) were cited and approved in

*Hathaway, Sup'r,* v. *Cincinnatus* (62 N. Y. 434), which itself is an authority for an action in the name of a supervisor to recover moneys due to his town, as having been received for its use; clearly a liability.

*Fourth.* The fourth point made by the appellants, that the action, independently of the form of the bond, cannot be maintained in the name of the supervisor, has been fully enough considered under the third head.

*Fifth.* The fifth point made is, that the judgment, if properly rendered at all, was for a larger sum than that for which the appellants were liable.. This point rests upon the proposition that the sureties on the official bond of a supervisor are not liable for the diversion by him of moneys that, though they were raised for the good of the town and have actually come into his hands, ought not to have been paid to him. That proposition, so far as that part of the condition of the bond is concerned that relates to the paying over or accounting for money received, we deem to be established by *The People* v. *Pennock* (60 N. Y. 421). It is to be seen whether any of the moneys with which the sureties of supervisor Marshall have been charged in judgment, he was not authorized and bound by law to receive in his official capacity. The learned justice who sat at Special Term disallowed from the claim of the plaintiff the items for moneys that were paid to the principal while supervisor, instead of to the commissioner of highways and overseers of the poor of the town. Under that principle, probably, claims are made by the defendants of further disallowances. *First.* The town collector returned to the predecessor in office of the principal obligor that there were uncollected taxes to the sum of $5,927. 15. That sum was a deficiency in the amount that the town should have paid to the county treasurer for State and county taxes. A way for the town to primarily meet such a deficiency was provided by the legislature. (Laws of 1874, p. 838, chap. 610, §§ 1, 2.) That way was, by the action of the supervisor under the authority and direction of the board of town auditors. That board gave authority and direction, and the immediate predecessor in the

office of supervisor of the principal obligor took the prescribed
action and raised the money, and paid it over to the county
treasurer. (Id., § 2.) And without going into needless and
wearisome detail, it appears from the case that the predecessor
of the principal obligor took such steps according to law, as
that by the provisions of law there came to the hands of the
principal obligor the sums found to be unpaid, and not ac-
counted for by him, for certificate of indebtedness, for lands
bid in by or for the town, and for rejected taxes. Indeed
there is no dispute but that the sums were regularly raised, in
accordance with law, nor but that by law they came to the
hands of the defendant Marshall. The contention is, that he
did not receive them officially, but as an individual. But some
of them were raised under the provisions of a legislative act
expressly passed for the towns of Westchester county, of which
White Plains was one. The whole act in its purview puts the
receipt and disposal of the moneys upon the supervisors of
those towns as an official duty. And the 24th section makes
the bond required by law of the supervisor of any town, mean-
ing the bond required by the acts of 1866 and 1868, above
cited, apply to all money that shall be received and disbursed
by him pursuant to that act. Others of them were lawfully
paid by the outgoing supervisor to the defendant Marshall, the
incoming officer. (1 R. S. 349, § 1 ; Laws of 1874, *supra,*
§§ 12, 13.) It is apparent that the moneys, other than those
disallowed at Special Term, came to the hands of the princi-
pal obligor in his official capacity, by virtue of the special stat-
ute, above cited, applicable to the towns in Westchester
county. The burden of the contention of the defendants is
that, through some over-caution of the town officers, sums were
raised twice for the same need of the town. Granted that it is
so, the sums were raised by provision of law. They came to
the hands of Marshall in pursuance of law, in his capacity of
supervisor. It was for him to account for them faithfully in
that capacity. When Horton was supervisor he was the imme-
diate predecessor of Marshall. The collector returned to him,
as unpaid taxes, to the sum of over $5,000. It was Horton's

duty to provide for the payment of that amount to the county treasurer. (Laws of 1874, *supra*, § 2.) He did so provide by a certificate of indebtedness of the town. Manifestly that certificate was to be met in due time. So, prudently, he asked the board of supervisors to put the item in the next tax levy upon his town. It was so done, and the amount was collected, and was properly paid to the supervisor then in office, who was Marshall. The act of 1874 does not contemplate that the town shall lose the amount of uncollected taxes thus paid by it to the county, so it provides different ways for reimbursement. One is that taxes rejected by the town auditors as erroneously assessed may be levied over again by a corrected description. (Laws of 1874, § 3.) This was done by the various officials, and a sum was collected and properly paid to the defendant Marshall as supervisor. Another is that when there has been a proper description of lands, and the taxes have not been paid on them, they may be sold by the supervisor. (Id., §§ 4, 5.) Obviously the moneys realized on such sale are to be received by the supervisor ; and if he has them in hand at the end of his term he is to pay them over to his successor in office. Another is that the supervisor shall bid in for the town all parcels of such land on which no one else will make a bid (id., § 10), and a tax is to be levied up to the sums thus bid. (Id., § 13.) These things, it seems, were done, and the practical result was that the moneys thus realized, and moneys from payments made to Supervisor Horton for taxes that had not been paid to the collector, more than equaled the amount of the deficiency of unpaid taxes returned by the collector, for which Supervisor Horton had provided. There were then the moneys coming from these sources, and from the tax levied to pay the town certificate of indebtedness. They were all the moneys of the town, however. They belonged nowhere else. The supervisor who had some of them must by law pay them to his successor in office. The collector, who received some of them by virtue of his warrant, must pay them where they belonged ; they belonged to the town for its general purposes, not for highways nor for schools nor for poor,

especially; and so must be paid to that officer of the town who is the general financial representative of the town, and that is the supervisor. They were properly paid to the defendant Marshall, he being that officer (act of 1874, § 13), and he as that officer, and receiving them by law as such, is legally to account and respond for them. There was, to be sure, a surplus over the present needs of the town, but the act 1874 (*supra*) foresaw and provided for that (§ 13), and directed that any surplus arising in the practical operation of the act should be applied to the benefit of the town. (Id.) It is so, as the defendants cite, that the Revised Statutes provide that when more is assessed on a town for taxes than the charges thereof, the surplus shall be paid by the collector to the county treasurer, and be placed to the credit of the town. (1 R. S. 399, § 7.) But the act of 1874 interferes with that in the section we have cited (§ 13), and thereby the whole amount is to be paid to the supervisor, and he is to apply the surplus to the benefit of the town.

There was doubtless in this case more money raised out of the town than was actually needed for the purposes of the town. It was raised in pursuance of law. It belonged to the town. It was not required by any law to be paid elsewhere. It was not required to be paid anywhere, because it was more than was needed. It was a surplus. The same law under which it was raised contemplated the probability of a surplus, and provided for the disposition of it. Being money belonging to the town, and raised under a law that looked to the vesting of it in the hands of the supervisor of the town, it was properly paid to him. He is accountable for it. The law was in effect before his bond was given. His bond is for that money. He and his sureties must, therefore, replace that which he has not paid over to his successors or other officers of the town.

The judgment should be affirmed.

All concur.

Judgment affirmed.