DETERMINED IN THE

# FIFTH DEPARTMENT

AT

# GENERAL TERM

## October, 1888.*

---

ENOS B. WOOD, AS SUPERVISOR OF THE TOWN OF HAMLIN, RESPONDENT, v. THE BOARD OF · SUPERVISORS OF MONROE COUNTY AND ALEXANDER McVEAN, APPELLANTS.

*Duty of a county treasurer to invest the taxes paid by a railroad, as a sinking fund, to pay town bonds issued under chapter 907 of 1869, as amended by chapter 283 of 1871 — the supervisor of a town may maintain an action to recover such moneys used by the county treasurer to pay county debts — the county treasurer, in such case, is liable as a trustee, and cannot plead the statute of limitations, although the county may do so — the county is not liable for his wrongful payment of the State tax to the comptroller.*

In an action, commenced on September 9, 1886, by the plaintiff, as supervisor of the town of Hamlin, against the board of supervisors of Monroe county and the defendant McVean, who was then, and had been continuously since February 18, 1879, the county treasurer of that county, to recover the amount of the taxes levied and collected from the Lake Ontario Shore Railroad upon the assessed value of so much of the said railroad as is located in the town of Hamlin, from and including the year 1873, down to and including the year 1885, the trial court found as a fact that the money raised in each of the said years in the town of Hamlin to pay the county and State taxes was paid to the county treasurer of the county of Monroe, who deposited the same in the treasury of said county, and that thereafter, and on or before the fifteenth day of February in each year, the said moneys were wrongfully taken out and appropriated by the county of Monroe to its own use and benefit in paying its county and State obligations without the consent of the said town of Hamlin or any of its officers; and that

---

* Other cases decided at this term of the court will be found reported in 49 Hun.

the county treasurer never purchased any of the town bonds issued to aid the said railroad, or invested any portion of the said moneys so received by him as a sinking fund, as required by chapter 907 of 1869, as amended by chapter 283 of 1871.

Upon an appeal from a judgment recovered against the board of supervisors for the amount of the State and county taxes paid to the county treasurer from the 9th day of September, 1880, to and including the year 1885:

_Held_, that the constitutionality of all the provisions contained in the acts of 1869 and 1871, and the interpretation which was to be given the same, had been determined by the Court of Appeals in _Matter of Clark_ v. _Sheldon_ (106 N. Y., 104).

The defendants contended that if the plaintiff was entitled to the relief awarded by the judgment appealed from, it could only be granted by the county judge of Monroe county, on a petition of the taxpayers of the town of Hamlin, in the manner prescribed by section 1 of chapter 283 of 1871.

_Held_, that this contention could not be sustained, as the right of the plaintiff to compel the county to account for moneys which it had wrongfully applied to its own use, in which the town of Hamlin was interested, was not created by this statute, but had its foundation in prior statutes of long standing as well as in the precepts of the common law.

That the principle contended for would apply only in favor of the party against whom the new right was created, and certainly could not be invoked by a wrong-doer as against a party whose right under the statute had ripened into a vested interest.

That it was well settled that the supervisor of a town may maintain an action of this character in his name as supervisor.

The recovery embraced that portion of the tax levied on the railroad property which is commonly known as the State tax, the trial judge holding that the amount of the State tax which is levied upon the taxable property of the county is, by statute, made a charge against, and a debt due from, the county, and that when the county treasurer made a remittance to the State treasurer of the amount of the State tax it was, in fact, in payment of a debt due from the county, made at the request of the defendant by its authorized agents, and it was, therefore, liable to the plaintiff on the same principle that it was liable for the county tax misappropriated to its use.

_Held_, that it was error to so hold as the law makes it the duty of the county treasurer to pay such taxes directly to the State treasurer, and in so doing he does not act as the agent of the county, but performs that duty as a public officer as directed by certain general statutes.

That the county was not responsible for the omissions or defects of the county treasurer, in respect to the moneys that were due to the State, nor at all concerned with them any further nor in any other manner than is declared in section 25 of chapter 427 of 1855 (2 R. S. [7th ed.], 1022), and that, under the provisions of that section, the county was not called upon to act until a loss had occurred, nor until the State had exhausted its remedy against the treasurer and his sureties.

*National Bank of Ballston Spa* v. *The Board of Supervisors of Saratoga County* (106 N. Y., 488) followed.

That such portions of the tax as was levied on the railroad property during the several years in question, as its portion of the town tax raised for the purpose of paying the annual interest on the bonds, and to redeem such of them as matured, was properly deducted and not included in the recovery.

A defense, set up in the joint answer of the defendants, that the statute of limitations was a bar to the recovery for all taxes paid over to the county treasurer more than six years prior to the commencement of this action, was sustained as to both defendants.

*Held,* that it was error to do so as to the county treasurer, as he received the tax as a trustee, within the legal sense of that term, and was precluded from setting up the statute and thus defeating the relief to which the plaintiff was otherwise entitled as against him.

That, as the moneys were unlawfully and wrongfully paid to the county, with the full knowledge of its lawful agent that the trustee had no title thereto which he could transfer to the county, and as the county had no rightful claim to the same, it should also be held liable as trustee to the plaintiff and be required to account for the funds which had been applied to its use, and that it was properly made a party defendant to this suit.

That, as the county had made no investment of the trust funds which were received from the trustee, but paid them out on its own indebtedness, and the only relief which the plaintiff could have by way of indemnity was a money judgment, the county could plead the statute of limitations as a bar.

That this action is of the class and character mentioned in subdivision 3 of section 382 of the Code of Civil Procedure, which provides that an action to recover damages for an injury to property or a personal injury, except in a case where a different period is expressly prescribed, must be brought within six years from the time when the act was done which creates the liability.

*Carr* v. *Thompson* (87 N. Y., 160) and *Miller* v. *Wood* (41 Hun, 600) followed.

The question whether the plaintiff, to bring the case within subdivision 5 of section 382 of the Code of Civil Procedure, must make out a case of actual and intentional fraud on the part of the defendant, the Board of Supervisors, or whether a case of legal or constructive fraud, not involving any moral delinquency on its part, was sufficient to prevent the running of the statute until the injured party had notice of the act which constituted the fraud, not considered.

APPEAL by the plaintiff and the board of supervisors, one of the defendants herein, from a judgment, entered in the Monroe county clerk's office on the 13th day of March, 1888.

The judgment was in the plaintiff's favor, against the board of supervisors, for the sum of $3,258.30, being the amount of State and county taxes collected from and paid to the county treasurer of the county of Monroe, by the Rochester and Lake Ontario Shore

Railroad Company, since the 9th day of September, 1880, down to and including the year 1885, with the interest from the date of each annual payment, together with ninety-nine dollars and thirty-four cents costs. The judgment, when collected, excepting the costs, is directed to be paid to the defendant Alexander McVean, or whoever shall, at the time of such payment, be the county treasurer of Monroe county, with specific directions to invest the same in pursuance of the provisions of section 4, chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871. Both of the defendants answered, and each appeals, in his own behalf, from the judgment.

In 1873 the Lake Ontario Shore Railroad Company constructed its road, a portion of which is located in the town of Hamlin, Monroe county. That town, in pursuance of the provisions of chapter 811 of the Laws of 1868, as amended by chapter 241 of the Laws of 1869, and chapter 127 of the Laws of 1871, issued bonds in the sum of $80,000, for the purpose of aiding in the construction of said railroad. Their validity is not in dispute. The interest thereon was payable annually, and $4,000 of the principal was redeemable each year, the first payment of principal and interest falling due in 1873. By a reorganization and acts of consolidation, the said railroad is now a part of the line operated by a corporation known as the Rome, Watertown and Ogdensburg Railroad Company. In each and every year, commencing with the year 1873, to and including the year 1880, so much of the said railroad as is located in the said town of Hamlin, has been assessed, and paid a State and county tax on the same basis and in the same manner as other taxable property situated in the town has been assessed and paid a tax thereon. In the year 1880 the amount of the State, county and town tax levied on the railroad property was $1,074.45, which was paid to the town collector. Of this sum $491.90 was paid to the defendant McVean, as treasurer, being the amount of State and county tax, and the balance was paid and used on account of the town charges against the said town of Hamlin. It does not appear by the record how much of the said sum of $491.90 was for county taxes. The treasurer paid to the county the county tax in full, on orders drawn on him by the board of supervisors. He also, on or before February, 1881, remitted to the State treasurer the full

amount of the State tax. The county treasurer never purchased any of the town bonds or invested any portion of the State tax as a sinking fund, as required by chapter 907 of the Laws of 1869, as amended by chapter 283 of the Laws of 1871.

This action was commenced on the 9th day of September 1886. The defendant McVean has been county treasurer continuously since February 18, 1879, down to the time of trial. The trial court found as a fact that the money raised in each of the said years to pay the county and State taxes, was paid to the county treasurer of the county of Monroe, who deposited the same in the treasury of said county, and thereafter, and on or before the fifteenth day of February in each and every year, the said moneys, so deposited as aforesaid, were wrongfully taken out and appropriated by the county of Monroe to its own use and benefit in paying its county and State obligations without the consent of the said town of Hamlin or any of its officers; that the whole amount of taxes collected from the said railroad company in said town, except school and road taxes, and paid over to the county treasurer of said county, from and including the year 1873 down to and including the year 1885, amounted to the sum of $10,726.87, which, with interest thereon amounted to $15,379.54; that the whole amount of State and county taxes collected from said railroad company in said town, and paid to the county treasurer during the said years, amounted to $4,908.55, which, with the interest thereon, amounted to $7,140.08; that the amount of State and county taxes collected from the railroad company and paid to the county treasurer since the 9th day of September, 1880, down to and including the year 1885, amounted to $2,536.32, which, with interest thereon, amounted to $3,258.30; that the county treasurer had retained in his possession that portion of said tax which was paid during the year 1886 to await the result of this action.

The trial court held, as a matter of law, that, under the provisions of the said acts of 1869 and 1871, the county was liable to the amount of the State and county tax levied on the railroad property in the town of Hamlin for the six years prior to the commencement of this action, and for all taxes paid to it more than six years prior to the commencement of this action, the plaintiff was barred of the right to recover by the statute of limitations.

*John M. Davy,* for the plaintiff.

*W. H. Sutherland,* for the defendants.

BARKER, P. J. :

The case of *Clark* v. *Sheldon* ( 106 N. Y., 104), determines that the acts of 1869 and 1871 are constitutional in all their provisions, and the interpretation which was given the same by the Court of Appeals in that case determines many of the legal questions presented by the parties on the arguments of their respective appeals.

Both the defendants contend that if the plaintiff is entitled to the relief awarded by the judgment, the same can only be granted by the county judge of Monroe county, on a petition of the taxpayers of the town of Hamlin, in the manner prescribed by section 1, chapter 283 of the Laws of 1871, relying, in support of this contention, on the legal proposition that when a statute creates a new right, unknown to the common law, and gives the remedy, he who would claim the right of the statute must pursue the remedy given by it, and that such remedy is exclusive. The procedure prescribed by the statute is limited to cases where the taxpayer complains against the county treasurer that he has neglected the duty imposed upon him by the statute. The right which the plaintiff is seeking to enforce is a property right given by the statute, for a violation of which the injured party is entitled to relief by action, either legal or equitable, as administered by the laws of the State, in force at the time the right to have a tax applied to the purpose mentioned was granted. The right of the plaintiff to compel the county to account for moneys which it has wrongfully applied to its own use, in which the town of Hamlin was interested, was not created by this statute, but had its foundation in prior statutes of long standing, as well as in the precepts of the common law. The principle contended for would apply only in favor of the party against whom the new right was created. It certainly could not be invoked by a wrong-doer as against a party whose right under the statute had ripened into a vested interest. (*Bridges* v. *Board of Supervisors of Sullivan County,* 92 N. Y., 578.)

This limitation of the rule makes it clear that neither defendant can appeal to it for the purpose of defeating the plaintiff's demand for relief in this action. In accordance with these views, we have

held in the case of *Vinton* v. *Board of Supervisors of Cattaraugus County*, decided this term, that the remedy given by the statute was not exclusive, but cumulative only.

The objection is also made that this action cannot be prosecuted by the plaintiff as supervisor, but should have been brought in the name of the town. We think it is well settled that the supervisor may maintain an action of this character in his name as supervisor. (*Bridges* v. *Supervisors of Sullivan County*, 92 N. Y., 570; *Sutherland* v. *Carr*, 85 id., 112; *Gleason* v. *Youmans*, 9 Abb. N. C., 107; New Code, 1926.)

The recovery embraced that portion of the tax levied on the railroad property, which is designated in the case as the State tax, which would have been properly payable to the State treasurer by the county treasurer, except for the provisions of the said act, which applies the same to the redemption of the town bonds. The learned trial judge, in allowing a recovery for the State tax, gave as his reason, in his written opinion, with which we are favored, that the amount of State tax which is levied upon the taxable property of the county is made a charge against the county and is a debt due from the county to the State, and is made so by statute; so that, when the county treasurer made a remittance to the State treasurer of the amount of the State tax, it was, in fact, in payment of a debt due from the county, made at the request of the defendant by its authorized agents, and it is liable to the plaintiff on the same principle that it is liable for the county tax misappropriated to its use. In support of these views we are cited to the provisions of 2 Revised Statutes ([7th ed.], 1020, § 8; 1022, § 25). If, when the State tax was remitted by the county treasurer to the State treasurer, the county of Monroe was, in any proper sense, a debtor to the State to the amount of the State tax authorized to be collected from the taxpayers of the county of Monroe for the several years mentioned, then the county has had the benefit of the money for which a recovery was had; and, in justice and equity, the county should restore the money to the fund from which it was wrongfully taken with its consent. The State collects taxes for State purposes through the operation of general laws acting directly upon the taxpayers. The law makes it the duty of the county treasurer to pay such taxes directly to the State treasurer. In doing

so the former does not act as the agent of the county, but he performs that duty as a public officer, as directed by certain general statutes. (*People ex rel. Lawrence* v. *Board of Suprs.*, 11 Hun, 306; *People* v. *Williams*, 3 Sup. Ct. [T. & C.], 338.)

The legislative action, as found in the laws of each year during the period in question, may be referred to in support of this proposition. In one of the enactments the language is as follows: "There shall be imposed for the fiscal year  *  *  *  on each dollar of real and personal property of this State, subject to taxation, taxes for the purpose hereinafter mentioned, which taxes shall be assessed, levied and collected by the annual assessment and collection of taxes for that year, in the manner prescribed by law, and shall be paid by the several county treasurers into the treasury of this State, to be held by the treasurer for application for the purposes specified; that is to say:" Then follows a statement for the purposes of which the tax is to be applied. (Laws 1880, chap. 515.)

The board of supervisors in each county is empowered and required to spread the tax authorized to be levied upon the taxable property within the county, the legislature making that body an auxiliary instrument in carrying out its own scheme for raising money for State purposes. The board of supervisors had no power or authority conferred upon it to determine the amount of the tax to be levied, nor when nor to whom it shall be paid, nor the use and purposes to which it shall be applied. The money realized never passes under the control of any official of the county who, in receiving the same, acts for or represents the county in its municipal capacity.

In support of the argument that the county becomes a debtor to the State for the amount of taxes annually assessed upon it by the comptroller, reference has been made to the Laws of 1855 (chap. 427). (2 R. S. [7th ed.], 1020, § 8; 1022, § 25.) Section 8 provides that "the comptroller shall, from the annual returns made to him of the valuations of real and personal estates in the several counties in this State, charge the several county treasurers with the amount of the State taxes, if any, to be raised in their respective counties, crediting them with their own fees." The comptroller is not authorized to charge the amount of the tax authorized to be levied and collected to the county, but the account is to be kept with the

county treasurer, who is required to account to the comptroller for the moneys which may come into his hands from the several town collectors. The other section referred to (§ 25) makes the county a surety for the losses which the State may sustain in consequence of the defalcation of the county treasurer. The provision is as follows: "All losses which may be sustained, and any deficiencies which may exist by reason of the default of the collector of any town or ward shall be chargeable on such town or ward; all losses which may be sustained, and any deficiencies which may exist by the default of the treasurer of any county in the discharge of the duties imposed by law shall be chargeable to such county, * * * and the several boards of supervisors shall add such losses or deficiencies to the next year's taxes of such town or county." It is the losses which are to be charged to the county, not the amount of tax authorized to be levied on the taxable property of the county. The precise question has been decided adversely to the views of the plaintiff in the case of the *National Bank of Ballston Spa* v. *The Board of Supervisors of Saratoga County* (106 N. Y., 488). The question was there presented whether the county was indebted to the State for the amount of the State tax authorized to be levied on the county, and charged to the county treasurer, as provided by section 8 of the act of 1885, and it was held that the moneys due the State were payable by the treasurer of the county, not as its officer or agent, but as an individual designated by his official name for the performance of specific duties, and that the county is not responsible for his omissions or defaults in respect thereto, nor at all concerned with them any further, nor in any other manner, than is by statute declared; that under the provisions of section 25, the county was not called upon to act until a loss had occurred, nor until the State had exhausted its remedy against the treasurer and his sureties; and when the event happened, which might make an action by the county necessary, the nature of the action is pointed out by the statute and the time when it shall be taken. And the court, in commenting upon the statute, remarked: "There is no provision for payment out of the general funds of the county, nor does the statute imply that the amount of a tax once paid shall be collected a second time from the taxpayers until the

statutory remedies shall have been exhausted against the delinquent treasurer and the just balance ascertained." A similar question to the one now before us is presented in *Bridges* v. *Supervisors of Sullivan County* (92 N. Y., 571), and it was held that the county was not liable for the diversion of moneys made by the county treasurer in paying the State tax to the State treasurer. The plaintiff has failed to show that the defendant has received or had the benefit of that portion of the State tax which was misapplied by the county treasurer, by remitting the same to the State treasurer, which he should have invested for the town of Hamlin. The county can only be liable in this form of action for moneys which have come to its treasury for its own use, of which it had or might have had the benefit. To this extent the judgment is erroneous.

Such portions of the tax as was levied on the railroad property during the several years in question as its portion of the town tax raised for the purpose of paying the annual interest on the bonds, and to redeem such of them as matured, was properly deducted and not included in the recovery. In terms the act of 1871 directs that all taxes, except school and road taxes, collected on the assessed valuation of all railroad property in any town which has issued bonds to aid in the construction of such road shall be paid over to the treasurer of the county for the purpose mentioned in the act. That portion of the tax has been applied to the purposes for which it was intended, and both the town and the bondholders have the full benefit of the tax.

The appellants, in their joint answer, set up the statute of limitations in bar of a recovery for all taxes paid over to the county treasurer more than six years prior to the commencement of this action. On the trial this defense prevailed as to both defendants. This ruling presents an important question, as it defeats the right of the plaintiff to recover a large sum for which the defendants would be otherwise liable. The plaintiff contends that the statute of limitations does not bar a recovery in view of the facts of this case, as each defendant is, as he insists, a trustee of the fund created by the provisions of the statute. On no other ground can the argument be supported that the statute does not bar a recovery as to the tax for the several years disallowed by the decision of the Special Term. It is well settled that the statute has no application to a direct

and continuous trust and matters of controversy between the trustee and the *cestui que trust* concerning the trust, until the trustee has openly, to the knowledge of the beneficiary, renounced, disclaimed or repudiated the trust. (*Kane* v. *Bloodgood*, 7 Johns. Ch., 90; *Lammer* v. *Stoddard*, 103 N. Y., 672: *Matter of Neilley*, 95 id., 382.) The first inquiry, then, is, did the county treasurer receive the tax as a trustee within the legal sense of that term, so as to preclude him from claiming the benefit and protection of the statute? We are inclined to the opinion that he did, and that he is precluded from setting up the statute and thus defeat the relief to which the plaintiff is otherwise entitled to as against him. In addition to the ordinary mode of creating trustees, they may be appointed by special act of the legislature for the purposes mentioned in the statute creating the trust. Trustees thus created do not materially differ from other trustees in the powers which they possess and the manner in which they shall discharge their duties, and they are equally amenable to the jurisdiction of courts of equity. (Hill on Trusts, m. p., 64.)

The tax paid to the treasury is to be invested as a sinking fund for the benefit of bondholders and the town issuing the same. The fund does not come into his hands by the terms of any contract, express or implied. The relation of debtor and creditor does not exist between himself and any other person, municipality or corporation. The manner and mode of investment, within certain fixed limits, is left to his discretion, and the time when the fund shall be paid out and distributed among the benficiaries is altogether uncertain and contingent. The funds came to his hands for no other purpose than the one mentioned in the statute, and they cannot be lawfully diverted therefrom and must be held and invested as therein directed. We are fully convinced that the county treasurer may be treated as a trustee, and so hold, and in determining the nature of the relief to which the plaintiff is entitled as against him he should be treated as such, the same as if the fund had come under his management and control for a like purpose from the hands and on the appointment of a private individual. As the moneys were unlawfully and wrongfully paid to the county, with the full knowledge of its lawful agent that the trustee had no title thereto which he could transfer to the county, and the county had no right-

ful claim to the same, it should also be held liable to the plaintiff as trustee and required to account for the funds which have been applied to its use. It is a uniform rule that all persons who take through or under the trustee shall be liable to the execution of the trust, and all assignees of the trustees except purchasers in good faith shall be bound by the trust. (*Wetmore* v. *Porter*, 92 N. Y., 76; *Oliver* v. *Platt*, 3 How. [U. S.], 333; Lewin on Trusts, 279; Pomeroy's Equity, § 1048; *Van Alen* v. *American Nat. Bank*, 52 N. Y., 8; *Justh* v. *Nat. Bank of the Commonwealth*, 55 id., 478; *Holden* v. *N. Y. and Erie Bank*, 72 id., 286; *Pennell* v. *Deffell*, 4 De Gex, M. & G., 372.) All parties participating in the breach of trust are equally liable without regard as to priority as between them, and this liability is joint and several, and they may be joined as defendants in a suit relating to a breach of the trust. (Hill on Trusts, m. p., 520, 521; *Hanson* v. *Worthington*, 12 Md., 418.)

In *Rolfe* v. *Gregory* (4 De Gex, J. & S., 576), the rule is formulated, as the same is applied in the English courts, as follows: "A fraudulent abstraction of trust property by the trustee, and a fraud-ulent receipt and appropriation of it by another person, for his own personal benefit, place the receiver in the same situation as the trustee from whom he received it, and he becomes subject, in a court of equity, to the same rights and remedies as may be enforced by the parties beneficially entitled against the fraudulent trustee himself; and when it is said that the person who receives, under such circumstances, is converted by the court into a trustee, the expression is used for the purpose of describing the nature and extent of the remedy against him, and denotes that the parties entitled beneficially have the same rights and remedies against him as they would be entitled to against an express trustee who had fraud-ulently committed a breach of the trust." (See, also, *Wilkinson* v. *Dodd*, 2 Cent. Rep. [N. J.], 245.)

The county was properly joined as defendant in this action, and may be required to account for the funds wrongfully received from the trustee. As the county made no investment of the trust fund which it received from the trustee, but paid it out on its own indebted-ness, the only relief which the plaintiff can have by way of indemnity is a money judgment. The fund cannot be followed any further. This brings us to the question, can the county plead the statute of

limitations as a defense in bar of a recovery, or is it precluded from doing so the same as the county treasurer is from whom it received the trust funds? The law supports the contention that it may. To prevent the application of the statute in favor of a trustee, the trust must be created by the direct act of the parties, and when a person is charged, as trustee, by implication or construction of law, he may claim the benefit and protection of the statute. It is only where there is an actual, continuing and subsisting trust that the trustee is precluded from setting up the statute of limitations. (*Kane* v. *Bloodgood*, 7 Johns. Ch., 90 ; *Matter of Accounting of Neilley*, 95 N. Y., 384 ; *Lammer* v. *Stoddard*, 103 id., 672 ; *Clarke* v. *Boorman's Exrs.*, 18 Wall. [U. S.], 493 ; York's Appeal [Pa.], 3 East. Rep., 587 ; *Burt* v. *Myers*, 37 Hun, 277.)

The trial court held that the provision of the statute, barring the right of action in six years, was applicable to the facts of this case. In this conclusion we concur. The only relief demanded against the county was a money judgment, based on the alleged fact that it had illegally and unlawfully applied to its own use the trust fund. As against this defendant, the judgment is, in effect, for money only, in an amount sufficient to indemnify the beneficiaries against loss arising from the devastavit of the fund. The action against the county is of the class and character mentioned in subdivision 3 of section 382 of the Code of Civil Procedure, which provides that an action to recover damages for an injury to property, or a personal injury, except in a case where a different period is expressly prescribed, must be within six years from the time when the act was done which creates the liability. Neither the allegation in the pleadings nor the findings of fact make a case within the provisions of subdivision 5 of section 382. The subdivision provides that in an action to procure a judgment other than a sum of money, on the ground of fraud, in a case which, on the 31st day of December, 1846, was cognizable by a court of chancery, the cause of action is not deemed to have accrued until the discovery of the fraud. It was held by this court in *Miller* v. *Wood* (41 Hun, 600) that that provision has no application to a case in which, as here, the only relief sought is a money judgment by way of compensation for damages. In support of this position, the case of *Carr* v. *Thompson* (87 N. Y., 160) was cited, and we think it is an authority in support of our views

It cannot be fairly said that the ground on which this action rests is fraud. In reaching this conclusion, we have nothing to guide us but the pleadings and the facts found. We have not considered the question for the purpose of deciding it, whether the plaintiff must make a case of active and intentional fraud on the part of the defendant to bring the case within subdivision 5 of section 382, or whether a case of legal or constructive fraud, not involving any moral delinquency on the part of the defendant, is sufficient to prevent the running of the statute until the injured party has notice of the acts which constitute the fraud.

We are unable to modify the judgment and correct the error by deducting the amount of the State tax for the reason that both the State and county tax are stated in a gross sum, and we have before us no data by which they can be separated. The judgment against the county treasurer is limited, and he is only required to invest the moneys directed to be paid to him by the county for the purpose and in the manner required by the statute.

We pass without considering our own suggestion whether it is not appropriate in this action to require the county treasurer to account for the moneys paid to him in the year 1879, and which he misapplied, and also requiring him to invest the moneys in his hands paid in the year 1886. These questions may arise on another trial.

The judgment is reversed with the costs of this appeal to abide the final award of costs, unless the parties stipulate the amount of the State tax, and interest thereon, included in the judgment, and consent that the same be deducted therefrom, then, in that case, the judgment be modified accordingly, and as so modified affirmed, without costs of this appeal to either party.

HAIGHT, BRADLEY and DWIGHT, JJ., concurred.

Judgment reversed and a new trial granted, with costs of this appeal to abide the final award of costs; unless the parties stipulate the amount of the State tax, and interest thereon included in the judgment, and consent that the same be deducted from the judgment, then, and in that case, the judgment be modified accordingly, and as so modified affirmed, without costs of the appeals to either party.