## CAREY v. WURSTER et al.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

MAYOR AND COMPTROLLER OF NEW YORK—POWERS.
Under Laws 1897, c. 525, authorizing the mayor and comptroller of the city of Brooklyn, and another person, to ascertain and determine certain claims against the late town of Flatlands, the intent was to confer this authority upon the mayor and comptroller as such, and not as individuals; and, accordingly, when the city of Brooklyn passed out of existence it devolved upon the mayor and comptroller of the new city of New York, who for that purpose are to be considered as their successors.

Appeal from special term, Kings county.

Application by James F. Carey for a writ of mandamus against Frederick W. Wurster and others. From an order denying the application, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Stewart Ross, for appellant.
Joseph A. Burr, for respondents.

HATCH, J.  The act which is the subject of construction upon this application is chapter 525 of the Laws of 1897. It reads:

"Section 1. The mayor and comptroller of the city of Brooklyn, and the late supervisor of the late town of Flatlands, are hereby authorized to ascertain and determine what claims, if any, against said late town remain unpaid, and for the payment of which no moneys have been provided or paid into the treasury of the city of Brooklyn, and they are hereby directed to make report of their determinations as to any such claim to the board of estimate of said city or their successors. It shall be the duty of said board of estimate or their successors after the receipt of such report to include the amounts so reported in the next ensuing budget or statement of amounts to be raised by taxation, and the amounts so included shall be levied upon the taxable property in said town, now the Thirty-Second ward of the city of Brooklyn, and paid to the persons entitled to the same according to the said report.
"Sec. 2. This act shall take effect immediately."

There could be no question but that this act devolved the duties therein provided upon the officers named therein in their official capacity, and not individually, were it not for the fact that the terms of the officers named shortly expired, and the city itself, as a separate municipality, was legislated out of existence. In a sense, therefore, there could be no successors of the officers, as there was no municipality. This suggestion is more apparent than real. It is also suggested that the designation of the late supervisor of the late town of Flatlands is a designation of a person instead of an officer, and therefore all are to be regarded as included. It is true that there can be no person, as to the supervisor, who can answer this description, except the person who was the last supervisor of the town before the same was annexed to the then city of Brooklyn. It is claimed that these considerations show that the designation of the mayor and comptroller of the city of Brooklyn is also personal, and not official, and that such, therefore, was the intent of the legislature. In support of this it is urged that the act known as the "Charter of Greater New York" became a law May 4, 1897, while the present act did not become a law until 14 days later; that by the terms of the charter the mayor and comptroller of the city of Brooklyn ceased to exist after the 31st day of December, 1897; that there was a successor to the board of estimate provided in the charter, but no successor to the officers named, and as the act provided for a report to the board of estimate, or its successor, it did not contemplate that the officers would perform their duties before their term of office expired, but did intend that all the officers named should personally perform the duty imposed, and report to the board of estimate, or its successor; that the official title of the mayor and comptroller is to be regarded as descriptio personæ. We do not think that this contention finds support in the act, when considered with contemporary legislation, and the scheme of the charter. The fact that the act designates the late supervisor in terms which make such appointment personal is of itself an indication of an intent not to so designate the others. If the intent had been to make a designation

of the persons holding the office of mayor and comptroller of the city of Brooklyn, it is fair to assume that apt words would have been used to accomplish such purpose, as were used when the supervisor was designated. The language used excludes such intention, for it is the same language uniformly employed to devolve a duty upon an official as such, and which attaches the duty to the successor of such officer. There would be force in the contention if in fact there were no successors to the mayor and comptroller of the city of Brooklyn. The scheme of the charter and its provisions, however, provide for such succession, not in particular application to the city of Brooklyn, for this was to go as the officials went. Provision was made for the demise of both. The form and government of the community were to change, but all of its obligations, and the devolution of official power in connection with it, was carefully arranged, and officials burdened with such duties provided, answering in all essential respects to the successors of the officials named in the act. Greater New York Charter (Laws 1897, c. 378), §§ 2, 3, 94. By the first of those sections, the city of New York is constituted, of which the former city of Brooklyn is a part. By the second, its name, powers, and rights are established. By the third, the mayor is made the executive head. The powers conferred and the duties devolved are, except as enlarged, in all respects similar to the powers and duties devolved upon the mayor of Brooklyn at the time when the present act was passed. So far as there is change or modification, it does not affect this question. The same thing is relatively true of the comptroller. We think, therefore, that the present act devolved its duties upon the mayor and comptroller of the city of Brooklyn as officials, and not as individuals; that the effect of the charter is to make the mayor and comptroller of the city of New York the successors of the officials named in the act, and as such officials they are to act in connection with the other person named in the act. This construction makes the act harmonious, and saves to the party the right to have his claim audited by a board as thus constituted. The date when the act was passed does not militate against this construction. The charter, by its terms, is to be construed, in reference to other acts, as having been adopted on the 1st day of January, 1898. Laws 1897, c. 378, § 1611. It was undoubtedly thought that this claim might be presented and audited between the time of the passage of the act and the date of the demise of the city of Brooklyn and its officers, and, if not, then the person named in the act could act with the lawful successors of the officials named, and thereby the act would be saved, and its purpose accomplished. In view of the several provisions of the statutes, the designation of the officers cannot be regarded as matters of description, as it seems clear that it was not so intended. Sutherland v. Carr, 85 N. Y. 105. The construction placed upon the act by the court below was correct.

The order should be affirmed, with $10 costs and disbursements. All concur.