In the Matter of the Accounting of WILHELMINA B. NEILLEY et al., as Administrators, etc., et al.

By the will of his father, A. and others were directed to pay a specified legacy to his sister S. In 1828 A. gave to S., who was then married, a written instrument, by which he acknowledged himself to have in possession and to hold in trust for her the sum of $268, which was stated to be the balance of the legacy then due her, upon which sum he promised to pay legal interest as long as the same remained in his hands, and to advance to her as required a portion of the principal, it having been agreed, as the instrument stated, between A. and the husband of S. that the money should remain in the hands of A. in trust for her and for her sole benefit. The husband of S. died in 1840 ; she died in 1842, leaving a daughter, W., then about thirteen years of age. A. died in 1877. W., in 1878, took out letters of administration upon the estate of her mother, and as administratrix preferred a claim against the estate of A. for the sum stated in said instrument, with interest from its date. *Held*, that the claim was barred by the statute of limitations ; that as A. was in fact the debtor of S. he could not change the character of his obligation by his own declaration nor could any agreement on the part of S. constitute him trustee instead of debtor, as under the law as it then stood she was disabled from making such an agreement because of her coverture ; that the agreement, therefore, that the money should remain in trust was made with the husband alone ; it affected only his interest in the debt and ceased upon his death, and thereupon S., as creditor by virtue

of the original indebtedness, became entitled at once to payment, and the statute then began to run.

Also *held,* assuming that S. might have elected to adopt the agreement made by her husband and to treat A. as trustee, this would not change the result, as, when a party has a concurrent remedy in equity and in law time is as absolute a bar in equity as it is in law.

S. from the time of the execution of the paper until her death, resided in the family of A., apparently having no property. W. also, after the death of her mother, lived in the family of A. up to her marriage in 1855. She testified that she found the paper in her mother's trunk after her death ; it did not appear that she made any claim by reason of it against A. during his life. *Held,* that assuming the case was one solely of equitable cognizance and that the statute was not a defense, it was a stale demand which equity would not entertain ; also that the legal presumption of payment applied.

*Payne* v. *Gardiner* (29 N. Y. 146), *Boughton* v. *Flint* (74 id. 476), *Bean* v. *Tonnele* (94 id. 381), distinguished.

(Submitted January 17, 1884; decided April 15, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 12, 1882, which reversed so much of a decree of the surrogate of Rockland county, made upon the final accounting of respondent as administratrix of the estate of Alexander Waldron, deceased, as disallowed a claim against said estate, presented by her as administratrix of the estate of Sarah Byron, deceased, and which adjudged the said claim to be valid and directed its payment.

The nature of the claim and the material facts relative thereto appear in the opinion.

*Thomas Nelson* for Hannah Osborn and another, appellants. The claim was barred by the statute of limitations. (Code, § 414; 2 R. S. 301, § 52; *Lawrence* v. *Trustees of L. and W. Orphan House,* 2 Denio, 577; Code of Pro., § 382, subd. 1, § 388.) If Mrs. Byron was under disability as a married woman, that disability ceased in 1840, and the action should have been brought within ten years thereafter. (*Wilson* v. *Betts,* 4 Denio, 201.) The claim was, in law, presumptively paid. (2 R. S. 301, § 48; *Morey* v. *F. L. & T. Co.,* 14 N. Y.

307 ; *Cent. B'k of Troy* v. *Heydorn*, 48 id. 260 ; *Mallory* v. *Vanderbilt*, 4 Abb. N. C. 127.) The paper given shows, in fact, an indebtedness, not a trust, though in it it is stated the intestate holds the same in trust. (*Borst* v. *Corey*, 15 N. Y. 506 ; *Wheeler* v. *Warner*, 47 id. 519 ; *Hubbell* v. *Medbury*, 53 id. 99 ; *Loder* v. *Hatfield*, 71 id. 92 ; *McMullen* v. *Rafferty*, 89 id. 456.)

*George W. Weiant* for Henrietta Brooks, appellant. The claim was barred by the statute of limitations. (Code, § 414; *Lawrence* v. *Trustees of the L. and W. Orphan House*, 2 Denio, 577; Code of Pro., subd. 1 of §§ 382, 388.) The trust created was one of a general character, such as may be said to exist between bailor and bailee, principal and agent, etc. (*Boughton* v. *Flint*, 74 N. Y. 476–481.) The old rule that no lapse of time is a bar to an action to enforce a trust as between trustee and *cestui que trust* applies only to strict technical trusts which were solely cognizable in equity. It is otherwise where there is a remedy at law, barred by the lapse of time. (*Murray* v. *Coster*, 20 Johns. 576 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, 135 ; *Gallatin* v. *Cunningham*, 8 Cow. 361; *Borst* v. *Carey*, 15 N. Y. 505 ; *Rundle* v. *Allison*, 34 id. 180 ; *Loder* v. *Hatfield*, 71 id. 92.) The Code has made the limitations as to the time within which actions may be brought alike applicable to all actions, legal and equitable, and the six or ten years' limitations apply. (*Hatfield* v. *Loder*, 71 N. Y. 92; *De Pierres* v. *Thorn*, 4 Bosw. 266, 288 ; *Hubbell* v. *Sibley*, 50 N. Y. 463; *Peters* v. *Delaplaine*, 49 id. 362 ; *Hubbell* v. *Medbury*, 53 id. 98.) The disability of coverture is of no avail, as the husband of the respondent's intestate died about the year 1842. (Old Code, § 101; *Clark* v. *Gibbons*, 83 N. Y. 107.) The failure to have administration of Mrs. Byron's estate granted cannot inure to the benefit of this respondent as against the running of the statute except for the period of one year. (Old Code, § 102; New Code, §§ 402, 403 ; *Hullslander* v. *Thompson*, 5 Hun, 348; *Sanford* v. *Sanford*, 62 N. Y. 553 ; *Wilson* v. *Betts*, 4 Denio, 201.) The

debt was due forthwith after the making of the instrument, and the statute of limitations began to run immediately after the making of the paper. ( *Wheeler* v. *Warner*, 47 N. Y. 519; *Hubbell* v. *Medbury*, 53 id. 99; *Loder* v. *Hatfield*, 71 id. 92.) As matter of fact, the instrument relied on was simply a recognition of the liability and indebtedness of Alexander Waldron for his share of the legacy given to his sister, Mrs. Byron, and which he was required to pay under their father's will, as the paper recites. (*Downs* v. *Phenix B'k*, 6 Hill, 297; *Payne* v. *Gardiner*, 29 N. Y. 146; *Boughton* v. *Flint*, 74 id. 476.) The paper shows a debt, payable on demand. There is a distinction between such a case and that of a deposit. (*Downs* v. *Phenix B'k*, 6 Hill, 297; *Wheeler* v. *Warner*, 47 N. Y. 519; *Payne* v. *Gardiner*, 29 id. 146.) If the writing upon which the claim is based be regarded as the formal expression of the obligation of Alexander Waldron to pay the legacy bequeathed by the will of Abraham Waldron, and the legacy be, in truth, the real cause of action, then the claim is barred. (*Loder* v. *Hatfield*, 71 N. Y. 92.) The claim was, in law, presumptively paid. (2 R. S. 301, § 47; *Morey* v. *F. L. & T. Co.*, 14 N. Y. 307; *Cent. B'k of Troy* v. *Heydorn*, 48 id. 260; 2 Perry on Trusts, 497, § 866 [2d ed.]; *Jackson* v. *Sackett*, 7 Wend. 94; *Miller* v. *Smith's Exr.*, 16 id. 443; *Lyon* v. *Chase*, 51 Barb. 13; Abbott's Trial Ev. 812.) A demand purely equitable, or to which the statute might afford no bar, may be rejected because of staleness. (*Bruen* v. *Horn*, 2 Barb. 586; *Moers* v. *White*, 6 Johns. Ch. 360; *Rlet* v. *Blanchard*, 4 Edw. 3.)

*George H. Forster* for respondent. The Surrogate's Court had jurisdiction to determine the claim. (*Neilley* v. *Neilley*, 89 N. Y. 352.) The instrument on which the claim is based declares a trust which relates to personal property, and is an express trust. Such a trust may be declared and proved by parol. (Perry on Trusts, § 86; *Day* v. *Roth*, 18 N. Y. 448, 453; *Slocum* v. *Barry*, 34 How. Pr. 320; *Young* v. *Young*, 80 N. Y. 437; *Boughton* v. *Flint*, 74 id. 476, 481; *Payne* v. *Gardiner*, 29 id. 146; *Downes* v. *Phenix B'k*, 6 Hill, 297.)

The claim was not barred by the statute of limitations, as the paper on which it was founded either declared an express trust, or was a certificate of deposit. (*Neilley* v. *Neilley*, 23 Hun, 651; 89 N. Y. 352; *Slocum* v. *Barry*, 34 How. Pr. 320; *Young* v. *Young*, 80 N. Y. 437; *Boughton* v. *Flint*, 74 id. 476; Perry on Trusts, §§ 228, 863; *Decouche* v. *Sanetier*, 3 Johns. Ch. 190; *Goodrich* v. *Pendleton*, id. 389; Hill. on Trusts [4th ed.], 264; Story's Eq. Jur. [10th ed.], § 1273, E; *Poillon* v. *Wilson*, N. Y. W'kly Dig.; *Thatcher* v. *Candee*, 3 Keyes, 157; *Payne* v. *Gardiner*, 29 N. Y. 146; *Downes* v. *Phenix B'k*, 6 Hill, 297.)

RAPALLO, J. Wilhelmina B. Neilley, as administratrix of her mother, Sarah Byron, deceased, claims of the estate of her uncle Alexander Waldron, deceased (of which estate the claimant is also administratrix), a sum of money alleged to have been due from him to Sarah Byron in the year 1828. Alexander Waldron was the brother of Sarah Byron, and by the will of their father a certain legacy was directed to be paid by Alexander Waldron and others to Sarah Byron. On the 4th of November, 1828, Alexander Waldron gave to his sister, the said Sarah Byron, a written instrument in the following words: " I hereby acknowledge to have in my possession and hold in trust for my sister Sally, the wife of George Byron, the sum of $268, being the balance due to her this day, for her proportion of $1,000 directed to be paid by my father in his last will and testament by my brothers Jacob, Tobias and myself to his daughters, for which sum I promise to pay my sister legal interest so long as the same remains in my hands, and from time to time, as her necessities may require, advance to her a proportion of the principal moneys. It having been agreed between me and her husband, the said George Byron, that the said moneys shall remain in my hands in trust for his wife and for her sole benefit.

Witness my hand this 4th day of November, 1828.

$268.                    ALEXANDER WALDRON."

George Byron died about the year 1840 ; Sarah Byron died March 27, 1842.   She left no property except household goods and the paper before described.   Her daughter Wilhelmina (the claimant) was then about thirteen or fourteen years of age, and from that time until August, 1855, when she was married, she lived in the same house with her uncle Alexander Waldron.

She testified that she found the paper in question after her mother's death in her mother's trunk, in a pocket-book.   It does not appear that she ever made any claim, by reason of the paper, against her uncle, although he lived some thirty-five years after the death of Mrs. Byron, during about thirteen years of which time, viz.: until her marriage in 1855, the claimant resided in the same house with him, and during more than six years of which time she was of age and unmarried, as appears from her testimony, in which she states that she was fifty-one years of age in January, 1879.   Sarah Byron had also lived fourteen years after the paper had been given to her, viz.: from 1828 to her death in 1842, during which time she resided in the family of her brother, the said Alexander Waldron.   Apparently she was possessed of no property, and ample time had elapsed during which her necessities would naturally have required the consumption of the petty sum of $268, acknowledged to have been due to her in 1828.

Alexander Waldron died in 1877, and on the 9th of March in that year letters of administration on his estate were granted to the claimant Wilhelmina, jointly with her husband John H. Neilley.   Up to that time no administrator had ever been appointed of the estate of her mother, Sarah Byron, deceased, but on the 8th of August, 1878, the claimant took out letters of administration on the estate of said Sarah Byron, deceased, and thereafter on her accounting before the surrogate, as administratrix of Alexander Waldron, deceased, in 1878, she preferred the claim in question, against his estate, for $268, and interest from November 4, 1828, amounting together to $1,209.37.

The surrogate disallowed the claim on the ground that it was barred by the statute of limitations. The claimant appealed to the Supreme Court from this decision and it was there reversed. A majority of the court, the presiding justice dissenting, held that the transaction disclosed by the written instrument of November 4, 1828, was a simple deposit and that the statute of limitations did not commence to run until a demand for the money, and that there being no evidence of such a demand the statute never commenced to run.

The court thereupon, instead of directing the matter to be reheard before the surrogate on the merits, rendered final judgment in favor of the claimant and directed that the claim be paid out of the estate, with costs.

The judgment of the Supreme Court is now sought to be sustained, as well upon the ground taken in the opinion at General Term, as upon the further ground that the instrument in question created an express trust, and that time does not bar a direct or express trust where the relation of trustee and *cestui que trust* is admitted to exist.

We are of opinion that the judgment cannot be sustained on the ground of an express trust. The transaction upon which the claim is based originated in an indebtedness from Alexander Waldron to Sarah Byron, which was liquidated and admitted in the written instrument of November 4, 1828, and is stated to be a balance due to her on that day. By that instrument Alexander Waldron promised to pay to her interest thereon so long as the money should remain in his hands, and to pay the principal from time to time as her necessities should require, and he further stated that it had been agreed between him and her husband, George Byron, that the money should remain in his hands in trust for Sarah and for her sole benefit. This agreement with the husband is the only feature upon which a trust could be predicated. It is true that Waldron also declared in the instrument that he held the money in trust for Sarah Byron, and if he had not owed her any thing she might have claimed that this was a good declaration of a t in her favor which she was entitled to enforce in equity. Bu

he was in fact her debtor, and he could not change the character of his obligation by his own declaration that he held the money due by him, in trust for his creditor, nor could any agreement on her part to constitute him trustee instead of debtor be set up, she being a *feme covert* at the time. No time was fixed for the continuance of the trust agreed to by her husband. The object clearly was to protect the fund from the husband or his creditors, and this purpose could only continue while he lived. The agreement that the money due should remain in trust, was made with the husband alone. Its only effect was to prevent him from demanding its payment and this affected only his interest in the debt. On his death this interest ceased, and the claim for the money never having been reduced to possession by him, but being a mere chose in action, became vested in his wife, who survived him. The trust, if any, thereupon ceased, and she, as creditor by virtue of the original indebtedness to her, became entitled at once to payment, provided the money had not been already applied to her use.

Under the law in force in 1828, when the instrument in question was made, she was disabled by her coverture from making any contract in respect to this money, which should preclude her from suing for it as soon as her disability was removed, and she was entitled immediately on the death of her husband to bring her action at law for its recovery. The statute thereupon began to run against her. Her title was no longer affected by the agreement of her husband that Alexander Waldron, her debtor, should hold it in trust for her. There had been no transfer to Alexander Waldron of the title to the fund. The purpose of the agreement ceased on the death of George Byron, and the trust, if any, terminated then. It is only where there is an actual, continuing and subsisting trust that a trustee is precluded from setting up the statute of limitations. ( *Wedderburn* v. *Wedderburn*, 2 Keen's, 749 ; *S. C.*, 4 M. & C. 52 ; *Portlock* v. *Gardner*, 1 Hare, 594 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 89.)

Assuming that Sarah Byron might have elected to adopt the

agreement made by her husband and to treat Waldron as trustee, that would not change the result. When the complainant has a concurrent remedy in a court of equity and in a court of common law, time is as absolute a bar in equity as it is at law. (*Humbert* v. *Trinity Church*, 7 Paige, 195 ; *S. C.*, 24 Wend. 587.) And in such cases the limitation as to actions at law applies. (*Borst* v. *Corey*, 15 N. Y. 505 ; *Rundle* v. *Allison*, 34 id. 182.) George Byron died in 1840 and her right to sue at law then accrued and was barred when the claim was presented thirty-eight years later, by her administratrix.

But assuming that the case was one solely of equitable cognizance and that, for any reason, the statute afforded no protection, it is the law of courts of equity, independent of positive legislative limitations, that they will not entertain stale demands. (STORY, J., 9 Peters, 416.) In *Kingsland* v. *Roberts* (2 Paige, 193) a bill to settle the accounts of a joint adventure where more than twenty years had elapsed since the subject of the controversy arose, was dismissed on the ground that the demand was stale. In *Piatt* v. *Vattier* (9 Peters, 405) a bill in equity to establish an equitable title to land, was dismissed on the same ground and without regard to the statute of limitations, where the defendant had been in possession thirty years. So when a bill was filed against an executor for an account, there being no statutory protection, and the presumption of a final settlement being rebutted, the court refused to open the account after a great lapse of time, when it was probable that most of the parties were dead and the vouchers and receipts were lost. (Perry on Trusts, § 869 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 93 ; *Hunton* v. *Davies*, 2 Rep. of Cases in Chan. 44 ; *St. John* v. *Turner*, 2 Vern. 418.) There could hardly be a clearer case of a stale demand than the one before us. The instrument upon which the claim is based had been made more than fifty years. It had been in the possession of the claimant's mother about fourteen years and of the claimant herself over thirty-five years, during which period the alleged debtor was living, and much of the time the claimant was a member of his family, and yet not even an assertion of such a

claim appears ever to have been made by her.   These circumstances seem to us to be of themselves sufficient to warrant the rejection of the claim.   The ground taken by the Supreme Court at General Term, was that the case was one of a deposit and that no right of action accrued until demand, consequently, no demand having been shown, the statute of limitations never began to run.   The cases of *Payne* v. *Gardiner* (29 N.Y. 146) and *Boughton* v. *Flint* (74 id. 476) are cited in support of this position.   But in those cases there had been no such great lapse of time as appears in the present case, nor were the circumstances similar.   Here there was no actual deposit.   The origin of the transaction was an admitted indebtedness from Alexander Waldron to Sarah Byron which was actually due in 1828. She was, by reason of her coverture, unable to make any contract which should change the character of the indebtedness, and when her husband died, in 1840, her right to payment accrued.   Independently of the statute of limitations and even if there were any obstacle to its application, the legal presumption of payment applied after the lapse of such a great number of years.   In the case of *Bean* v. *Tonnele* (94 N. Y. 381), lately decided in this court, it was held that the presumption of payment after the lapse of twenty years was applicable to a simple contract indebtedness, and in the present case there are no facts or circumstances to rebut such presumption.

On all these grounds we are of opinion that the judgment of the Supreme Court should be reversed and the decree of the surrogate affirmed, with costs.

All concur.

Judgment reversed and decree affirmed.