SWEENEY *v.* SWEENEY *et al.*

*(Supreme Court, General Term, First Department.* May 16, 1890.)

</div>

WILLS—PAYMENT OF LEGACY—PRESUMPTION—LAPSE OF TIME.

Where a legacy of $1,500 is payable on the legatee's attaining his majority, and either in one amount or installments, as the executor might elect, its payment will be presumed, as against the unsupported testimony of the legatee, after the death of the executor, and a lapse of 43 years from testator's death, and 30 years from the legatee's becoming of age, coupled with testimony showing that the executor had discharged all the other obligations of the will, educated and housed the legatee, kept his house always open for him, obtained him situations, furnished him with outfits, and to a great extent with clothing, for many years.

Appeal from special term, New York county.

Action by John E. Sweeney, individually, and as administrator *c. t. a.* of Ephraim Sweeney, to enforce the execution of certain trusts created under his testator's will, and for an accounting, by Charles D. Sweeney and Jeremiah J. O'Connor, as executors of Daniel Sweeney, the executor named in said will. There was judgment for defendants, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Alex. Finelite,* (*Daniel T. Robertson,* of counsel,) for appellant. *Wager & Acker,* for respondents.

BRADY, J. In addition to the opinion delivered in the court below, it will not be necessary to say much. That opinion is as follows:

"PATTERSON, J. On the trial of this cause, three questions were presented for consideration,—one relating to the construction of a bequest for the benefit of the plaintiff contained in the will of Ephraim Sweeney; another relating to an alleged fraud on the part of Daniel Sweeney, the executor of that will, by which it is claimed the plaintiff was deprived of the provision made for him by the testator; and the third related to the claim now urged by the plaintiff being barred by the statute of limitations. The record presents an unusual state of facts. Ephraim Sweeney, the uncle of the plaintiff, died in August, 1846, leaving a last will and testament, of which Daniel Sweeney, his brother, now also deceased, was the executor. Among other things, it was provided in Ephraim Sweeney's will, and by the third clause thereof, as follows: 'I direct that the sum of $300 annually shall be paid by my said exec-

utor out of my estate, for the education, support, and clothing of my nephew, John Sweeney, son of my deceased brother, John Sweeney, it being my wish that his education shall be continued for five years from the present time, at the discretion of my executor hereinafter named; and, upon his attaining the age of twenty-one years, I give and devise (*sic*) to him the further sum of fifteen hundred dollars, to be paid to him either in one sum, or in such portions as the discretion of my executor shall suggest.' The proper construction of this provision for the benefit of the plaintiff is that, within the discretion of the executor as to time, three hundred dollars for five years might be expended for the education and maintenance of the plaintiff, and, upon his attaining the age of twenty-one years, he was to receive $1,500, either in one payment or in installments, as the executor might elect. This action is brought upon the theory of an annuity being granted of $300 a year, and a specific legacy of $1,500, payable upon the plaintiff becoming twenty-one years old. As to the annual allowance for education and support, it is perfectly clear that Daniel Sweeney, the executor, did, for some years after the testator's death, maintain and support the plaintiff, first at St. John's College, at Fordham, and afterwards educated him at the Columbia College Grammar School, and provided for him as an inmate of his own family, and precisely as he did for his own children. There is nothing whatever to indicate unfaithfulness or fraud on the part of Daniel Sweeney, the executor, in this regard. Nor is there anything appearing on this record with respect to the specific bequest of $1,500 which, after this lapse of time, nearly forty-four years from the death of Ephraim Sweeney, and over thirty years since the plaintiff attained his majority, would justify the court in concluding that this $1,500 legacy had not been paid in the manner Ephraim Sweeney authorized by his will; for it will be observed that it was not to be paid in one gross sum, necessarily, but the executor had discretion to pay it from time to time in installments. It is proven that he did from time to time, during the irregular and wandering life of the plaintiff, make provision to some extent for him, or on his account. In such a peculiar case as this, I should not feel justified in finding as matter of fact, on the unsupported testimony of the plaintiff alone, that the relative who had harbored him as an infant, treated him as one of his own family, placed him on the footing of a son, welcomed and protected him when he returned from his wanderings, aided him more than once in re-establishing himself in positions of respectability and usefulness, would have fraudulently withheld from him, or, to put it plainly, stolen from him, the inconsiderable amount of fifteen hundred dollars. It is very easy for ingenious counsel to make a patchwork of circumstances affecting the integrity of a dead man, but in this case the only real thing to show that the plaintiff has not received in some form the benefit of his legacy is his own statement that it was not paid to him by anybody; but, so far as that statement is concerned, I cannot receive it as affecting Daniel Sweeney, the executor. *Lerche* v. *Brasher*, 104 N. Y. 160, 10 N. E. Rep. 58. Without considering the questions of law which were presented and ably discussed in the briefs of counsel, I am constrained to dismiss the complaint on the ground of failure of proof, and judgment is ordered accordingly."

The demand presented by the plaintiff is clearly stale, and there is nothing to justify the charge of fraud upon which, in part at least, it was sought to be enforced. Daniel Sweeney, the executor of Ephraim Sweeney, is shown by positive evidence to have discharged all the obligations imposed upon him by the will except in reference to the plaintiff, and as to him by facts and circumstances. The latter's education was attended to, and he was housed and clothed by Daniel Sweeney. Indeed, it was stated by the son of Daniel that his father did everything for the plaintiff that he did for his own children, and even more. He gave him lessons in music and Spanish, which he

did not give to them. The plaintiff, it must be said, distinguished himself as a rover, but even after his wanderings seems to have returned to his uncle's home, and was cared for by him. The latter's interest in and devotion to him seems to have been unremitting. He says himself that he was furnished with clothing during the time he was at Columbia College Grammar School by his uncle, after leaving which, and having obtained a position, he lived with him, but was not charged for his board, using the money received for his work as he pleased. After that, he ran away from home without his uncle's consent or knowledge, and wandered over the United States, trying to get a job here and there. In 1853 he shipped on board the United States vessel North Carolina, but must have returned to Daniel Sweeney's in 1856, and then shipped for a whaling voyage, although he says that in 1854 he was also in a whaling vessel, and that when he went on board the whaling ship, in 1856, he was absent three years and nine months. He also states that after having shipped, in 1853, on board the North Carolina, he came back to his uncle, and then shipped in the brig Bainbridge, bound for Africa, stayed on her six months, deserted in Rio, went back to his uncle Daniel, and stayed there perhaps a couple of months. He says further that the first time he began to clothe himself was in 1852 or 1853, when he went in the Bainbridge, up to which time he had been clothed by Daniel Sweeney off and on. In 1861 he was appointed (October 21st) acting master's mate by the secretary of the navy, a position obtained for him by his uncle Daniel, on which occasion his outfit was furnished by him. He also makes the extraordinary statement that he did not know that his uncle Ephraim, under whose will he now claims, had left any property, and never asked any person in reference to it, and had no idea of it, although he expected to receive something from his uncle Daniel by his will, and was disappointed that he did not,— a circumstance which no doubt prompted this action.

It is not at all astonishing that the judge presiding in the court below should have arrived at the conclusion that this was a peculiar case, and that, on the unsupported testimony of the plaintiff, he could not regard the plaintiff's claim as established. The discharge by his uncle of all the other obligations of the will, his devotion to the interests of the plaintiff, and his liberality to him,—keeping his house always open for him, obtaining situations for him, and furnishing him with outfit, etc., and undoubtedly, to a great extent, clothing him for many years,—would very easily dispose of the sum of $1,500, the explanation of which might readily be furnished if the uncle were alive. These circumstances make the case one in which the presumption of payment should be entertained. It was a rule of the common law that the payment of a bond or other specialty would be presumed after the lapse of 20 years from the time it became due, in the absence of evidence explaining the delay, although there was no statutory bar. This subject is discussed in Bean v. Tonnele, 94 N. Y. 381, and again in Re Neilly, 95 N. Y. 382, a case somewhat kindred to this, in which it is said: "It is only where there is an actual, continuing, and subsisting trust that a trustee is precluded from setting up the statute of limitations." The proof in this case is not satisfactory as to the continuance and subsistence of the trust. The presumption is that the trust was discharged by payment. It was said also, in the case cited, that it was one solely of equitable cognizance, and that if, for any reason, the statute afforded no protection, it is the law of courts of equity, independent of positive legislative limitations, that they will not entertain stale demands. It has already been suggested, as illustrated by the opinion of the court below, that this is decidedly a stale demand; and therefore, whether it be tested by legal or equitable rules, under the authorities cited, it should not be enforced. The judgment must be affirmed, with costs.

All concur.