*In re* BARKER.

(*Surrogate's Court, New York County, Filed June*, 1893.)

GUARDIAN AND WARD—STATUTE OF LIMITATIONS.

> Where it clearly appeared from the evidence that the ward. both before and after her majority, had a knowledge of the state of her guardian's accounts sufficient to show her that the entire trust fund had been expended, and she did not begin the proceeding till ten years after attaining her majority, the statute of limitations applies. *Quaere*, whether even without such evidence the rule that as between trustee and *cestui que trust* no statute of limitations, nor any bar by analogy to the statute, can be operative, is applicable.

Accounting by guardian. Report of referee overruled on exceptions and. proceedings dismissed.

Charles F. Wells, for guardian; Large & Stallknecht, for ward.

RANSOM, S.—This is an accounting by the general guardian of the infant above named, originally compulsory, but converted into a voluntary proceeding. Exceptions are filed by accountant and contestant. On the 8th of July, 1869, Mrs. Place, the mother of the infant, was appointed general guardian. The ward filed a petition for a compulsory accounting March 9, 1891, 22 years after the appointment, and within six days of ten years after the ward had attained her majority. Prior to the taking of any testimony in this proceeding as to the accountability of said guardian for moneys received and paid out by her as such, counsel for the guardian interposed as a defense the statute of limitations, both to the said petition of the said contestant, and to the objections to said account of said guardian, as filed. The decision of the referee, overruling the objection of the statute of limitations, is based upon *In re* Camp, 126 N. Y. 389, 27 N. E. Rep. 799, which appears to hold that, although a party may cease to be guardian, upon the ward coming of age, yet so long as the property remains in his possession

as guardian, and unaccounted for, he remains liable to account.
The leading case in this State upon the rule that, as between the
trustee and the *cestui que trust,* no statute of limitations, nor
any bar by analogy to the statute, can be relied on, is Kane v.
Bloodgood, 7 Johns. Ch. 89. The case of Lockey v. Lockey,
Prec. Ch. 518, referred to on page 113, 7 Johns. Ch., clearly
recognizes the rule that, where there is a legal and equitable
remedy in respect to the same subject-matter, the latter is under
the control of the same statute bar with the former. In Bus-
well on Limitations (page 193), it is stated that the ancient
action of account was the remedy provided in cases where
there was a privity between the parties, as against a
bailiff or receiver, or a privity in law as against a
guardian *in socage.* Further on it is also stated that
the period of limitation to an account is, either by con-
struction or statute provision, made the same in equity as at
law. In an early case the lord chancellor was of opinion that
"where one receives the profits of an infant's estate, and, six
years after his coming of age, he brings a bill for an account,
the statute of limitations was a bar to such a suit, as it would
be to an action of account at law," and cited Lockey v. Lockey,
Prec. Ch. 518. The administration of trusts falling within
the peculiar and exclusive jurisdiction of courts of equity, the
doctrine is established that as between trustee and *cestui que
trust,* so long as that relation subsists, the trust cannot be af-
fected by the statute of limitations; but where the relation is
no longer admitted to exist, or time and long acquiescence have
obscured the nature and character of the trust, or the acts of the
parties, or other circumstances, give rise to presumptions un-
favorable to its continuance, courts of equity will refuse the
relief, upon the ground of lapse of time, and inability to do
complete justice between the parties. The equitable principle
upon which the general doctrine is founded is thus stated by
Lord Redesdale: "If a trustee is in possession, and does not
execute his trust, the possession of the trustee is the possession
of the *cestui que trust;* and, if the only circumstance is that he

31

does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title." Hovenden v. Annesley, 2 Schoales & L. 633; Busw. Lim. & Adv. Poss. 457.

There is authority for the statement that upon the ward's arriving at his majority, or at least upon his settlement with the guardian, the limitation begins to run, as between guardian and ward. Mason v. Johnson, 13 S. C. 20; Jones v. Jones, 91 Ind. 378. After a ward becomes of age, the fiduciary relation of guardian and ward ceases, and the parties are in relation of debtor and creditor, and the claim of the ward is within the statute. Busw. Lim. & Adv. Poss. 474, and cases cited. The distinction runs through all the cases that the mere retention of the funds furnishes no grounds to assume the title thereto in the trustee, inasmuch as such retention is consistent with the character he sustains, and therefore does not excite any suspicion of an intention to appropriate the funds. Although the statute of limitations does not apply directly to technical trusts, yet it has always been held that if a trustee should deny the right of the *cestui que trust,* and assume absolute ownership of the trust property, he thereby abandons his fiduciary character, and the *cestui que trust* must commence legal proceedings against him within the statutory period of limitations. It should appear that the *cestui que trust* had knowledge of the trustee's denial, repudiation, or adverse claim, and that the trustee has not been guilty of fraud. The doctrine that a positive and technical trust is not barred by the lapse of time is subject to two qualifications, namely, that no circumstances exist to raise the presumption from lapse of time of an extinguishment of the trust, and that no open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, which requires them to act as upon an asserted adverse title. Busw. Lim. & Adv. Poss. 471. Lapse of time, without any claim or admission of an existing right, coupled with circumstances tending to show that a trust had been executed, may raise a presumption of its execution, and, in case of a guardian,

may authorize the court to require a less specific statement of items, and raise a presumption of payment to and for the ward to the amount of the account. Gregg v. Gregg, 15 N. H. 190; Whedbee v. Whedbee, 5 Jones, Eq. 392. In *Re* Neilley, 95 N. Y. 382, it was held that it is only where there is an actual, continuing and subsisting trust that a trustee is precluded from setting up the statute of limitations. This was held upon the authority of Kane v. Bloodgood, 7 Johns. Ch. 89. The opinion of the court in this case, at page 90, refers to the equitable rule under which courts of equity reject stale claims, independent of the statute of limitations, and cites one case where a bill was filed against an executor for an account, and there being no statutory protection, and the presumption of a final settlement being rebutted, the court refused to open the account after a great lapse of time, when it was probable that most of the parties were dead, and the vouchers and the receipts were lost. In the case at bar, ten years had elapsed after a practical, informal settlement out of court, and many of the items for which reimbursement was claimed were rejected because of the absence of vouchers or substituted proof required by section 2734, Code Civil Pro. In *Re* Hawley, 104 N. Y. 261, 10 N. E. Rep. 352, it was held that, to constitute a testamentary trustee, it is necessary that some express trust be created by the will. Merely calling an executor or guardian a trustee does not make him such. Every executor and every guardian is, in a general sense, a trustee, for he deals with the property of others, confided to his care. But he is not a trustee in the sense in which that term is used in courts of equity and in the .statutes. *In re* Camp, 126 N. Y. 377, 27 N. E. Rep. 799, was a proceeding against the father and guardian of petitioner to compel him to account. The mother of the ward died seized of certain real estate, leaving her husband and four children, heirs-at-law. Prior to her death the city had commenced proceedings to acquire title to a portion of the real estate, which after her death resulted in an award of $26,000 to the petitioner, and his brother and sisters. This sum was paid to the father, as such guardian. The ac-

· counting proceeding was commenced in May, 1888. The
moneys were received in February, 1868. The fact of the re-
ceipt of the moneys first became known to the petitioner within
a year of the institution of the proceedings. The respondent
answered that the guardianship of the petitioner ceased in 1872,
when he became of age, and that the present proceedings were
on that account barred by the statute of limitations. The sur-
rogate overruled the objection, and directed the guardian to file
an account. After an unsuccessful appeal to the General Term,
the guardian filed his account, which was of a most general
character, and from which, and from his statements accompany-
ing the same, it appeared that he had made certain payments
which he claimed to charge the petitioner with, and which, if
allowed, would show that he had more than paid out for the
benefit of the ward the moneys that he had received. Objec-
tions were filed to the account, and it was sent to a referee. Be-
fore the referee the guardian insisted that the fund was not
such a fund as he should account for as general guardian, nor
could any portion of it be enforced to be distributed among the
heirs at that time, or at any time prior to his decease. This
objection was also overruled, and the guardian excepted. The
referee found the guardian liable to account for the amount he
had received, but that he was to be credited with the value of
his life interest therein. He deducted the proportionate share
of such life interest from the share of the petitioner, and gave
judgment for the balance, with interest. The General Term
modified this so as to charge the guardian with the full sum
received by him, with interest from the time he received it. At
the foot of page 388, 126 N. Y., and page 803, 27 N. E. Rep.,
of the opinion, the court refer to their previous decision in *Re*
Hawley, 104 N. Y. 261, 10 N. E. Rep. 352, and distinguish it.
But at page 389, 126 N. Y., and page 803, 27 N. E. Rep., they
state that they do not regard the matter as very important upon
this question. While I am not by any means satisfied that the
decision of the Court of Appeals in *Re* Camp, 126 N. Y. 377,
27 N. E. Rep. 799, is decisive upon the point that the relation

existing between a guardian and a ward after majority is such a technical trust as to subject it to the rule that the statute of limitations does not apply, the matter may be decided upon another point, as to which the law is entirely clear. At page 12 of the minutes, the mother testified: "Ever since Cora knew anything, she saw my account book. It always lay on the table or on my desk, and it was never locked. If she did not inspect those accounts, it was because she did not want to. I supposed she did. Question. Did she look over the accounts? Answer. In a general way, certainly she did, for she could not help it. I have read them over to her, and told her about it."

These transactions occurred at or before she attained her majority. "Q. Do you say the same of your account as guardian —the history of your administration up to the time when she became of age?" A. Yes, sir." At page 78 the ward testified: "My mother always treated me very kindly, but I thought it strange that I never had anything, or any money. After I was of age, I asked my mother about it. I never asked before. Q. What did she tell you when you became of age? Did she show you the account? A. No; she only said she spent all upon living."

It appears by this testimony that subsequent to the attainment of her majority, the guardian and ward had a conversation concerning the accounts of her mother, and the mother stated that she had expended the entire fund. All the other circumstances surrounding the case negative the idea that the trustee was guilty of any fraud or concealment which would prevent the repudiation from having its legitimate effect. The accounts were always open to her inspection, and, notwithstanding her statement that she did not examine the same, it is apparent from other portions of the testimony that she knew their contents, and was aware that in some instances her mother had charged against her sums as low as 5 or 10 cents. She could not have known this without, to some extent, having examined the account. I am therefore of opinion that the referee's report must be overruled, and the proceedings dismissed, upon the ground that the statute of limitations runs against the claim.