THE FARMERS' LOAN AND TRUST COMPANY, *Trustee*, v. J. A. ESSEX *et al.*

No. 12,860. (71 Pac. 268.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Defective Service by Publication.* A default judgment rendered upon publication service against the "Farmers' Loan and Trust Company," purporting to bar the lien of a mortgage assigned of record to the "Farmers' Loan and Trust Company, Trustee," is not binding on the "Farmers' Loan and Trust Company, Trustee."

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed January 10, 1903. Reversed.

*Flower, Peters & Bowersock*, and *Miller, Buchan & Morris*, for plaintiff in error.

*L. W. Keplinger,* and *C. W. Trickett*, for defendant in error J. A. Essex, and *Hutchings & Keplinger*, for defendant in error Wyandotte State Bank.

The opinion of the court was delivered by

BURCH, J. : A first mortgage of real estate was assigned by the owner under the following instrument, duly acknowledged and recorded :

"DES MOINES, IOWA, March 6, 1891.

For value received, the New England Loan and Trust Company hereby assigns this bond to the Farmers' Loan and Trust Company, Trustee, or order, and guarantees the prompt payment of the interest coupons thereto attached, and the payment of the principal within two years from date of maturity, with interest thereon at six per cent. per annum, payable semiannually, from said date.

NEW ENGLAND LOAN AND TRUST COMPANY.

By W. F. BARTLETT, *Treasurer*.

Subsequently, in an action to foreclose a second mortgage, the Farmers' Loan and Trust Company was made a party, served by publication, and judgment taken against it, under an allegation that it claimed some interest in the mortgaged premises but that such interest was subject and inferior to the mortgage sought to be foreclosed. After a sheriff's deed had been issued, the purchaser at the foreclosure sale brought suit to quiet his title against the Farmers' Loan and Trust Company, Trustee, alleging that it claimed some interest in the property, and judgment was rendered against it upon publication service. Within proper time this judgment was opened and the Farmers' Loan and Trust Company, Trustee,

allowed to defend. On the trial the evidence on behalf of the Farmers' Loan and Trust Company, Trustee, consisted of its unpaid note, the mortgage securing it, and the assignment set forth above. The plaintiff relied on the judgment in the former suit as conclusive of the rights of the parties. The trial court held that under this evidence the previous judgment against the Farmers' Loan and Trust Company bound the Farmers' Loan and Trust Company, Trustee. Was this error?

To support the judgment of the trial court it is contended that the word "trustee" in the assignment of the mortgage was merely *descriptio personæ*, and could, therefore, be disregarded in estimating the capacity of the assignee. The argument is supported by certain cases in which descriptive words were ignored, and *Kline v. Bank of Tescott*, 50 Kan. 91, 31 Pac. 688, 18 L. R. A. 533, 34 Am. St. Rep. 107, is referred to, in which the following quotation is made:

"Where individuals subscribe their proper names to a promissory note, *prima facie* they are personally liable, though they add a description of the character in which the note is given; but such presumption of liability may be rebutted, as between the original parties, by proof that the note was in fact given by the makers as agents, with the payee's knowledge. (Byles, Bills, 27, n. 1.)"

The latter case involved merely the liability of signatories when sued upon an instrument they had executed, and the application of the doctrine of *descriptio personæ* is usually made in cases of that character. Such decisions proceed upon the theory that, to escape liability on an undertaking of his own creation, a representative party must charge his principal by apt and express words, and, conversely, an obligor must fix with certainty the person who is to enforce

the contract, or general descriptive words will not preclude a recovery by the promisee in his individual right. In the same manner the rule is frequently applied in the construction of pleadings in which some annexation is made to a name which does not necessarily impute a peculiar capacity or relation.

In controversies like the present one a different principle governs. The party named in the instrument is not to be charged with any liability as upon a contract, and the only duty it owed was to give reasonable notice of its authority and rights. When the record disclosed an encumbrance vested in a company expressed to be "trustee," every person, without knowledge of the facts, was bound to give the word its usual and ordinary signification. In the commonest affairs the term is pregnant with meaning to prudent business men. It is not usually a mere sentimental addition of the personal "estate, degree or mystery" of a party such as old law and custom sanctioned and required, but its constant office is to give solemn warning of qualified titles and fiduciary relationships. It was, therefore, sufficient in this case to notify the world that the Farmers Loan and Trust Company was not an owner absolute, but that it held the mortgage for the benefit of others.

The distinction noted is drawn in a case resting upon different facts by the court of appeals of New York. In the opinion it was said:

"The position urged by the counsel for the appellant, that this loan must be regarded as an individual transaction between Abner P. Downer and the defendant, although he was described in the bond and mortgage as Abner P. Downer, guardian, etc., cannot be maintained. It is thought to be supported by a line of cases holding that an addition to the name of a contracting party of his title or office does not

deprive the contract of its personal character. These authorities have no application to this case. They relate only to the liability of the person employing such title in an action between him and a third party. (*Sutherland v. Carr*, 85 N. Y. 110.) The question here is that of the ownership of the moneys represented by this mortgage, and is to be determined by the principles governing the ownership and management of trust estates. The words 'guardian, etc.,' inserted in the securities in question, operated as notice to the defendant Longyor of the rights of the wards of whom Downer was guardian." (*Fellows v. Longyor*, 91 N. Y. 324, 331.)

In *Sturtevant and others v. Jaques*, 14 Allen, 523, the owner of the equity of redemption took an assignment of a mortgage on the land in the following language:

"Know all men by these presents, that I, Samuel K. Williams, the mortgagee within named, in consideration of fourteen thousand six hundred and three $\frac{92}{100}$ dollars, (being the amount of principal and interest due on the within mortgage,) to me paid by Newell Sturtevant, of said Boston, trustee, the receipt whereof is hereby acknowledged, do hereby assign, transfer and convey unto the said Sturtevant, trustee, all my right, title, interest and estate in and to the land and premises within described, together with this mortgage deed, the promissory note within described, and the debt secured thereby; to have and to hold the same, to the said Newell Sturtevant, trustee, and his heirs and assigns, to his and their own use forever," etc.

The court held that the use of the word "trustee" raised a presumption that the mortgage was taken in trust, and would cloud the title, so that a purchaser could not be compelled to accept a deed purporting to convey free of encumbrances, without a release. In the opinion it was said:

"If it had been a simple assignment, the title thus acquired would have been perfect. But the assign-

ment was to him as 'trustee,' and the note was also indorsed to him as 'trustee.'   This is a notice that he took the note and mortgage in trust, and raises a presumption that a trust existed.   What the trust was does not appear, nor does it appear that any written . declaration of trust is on record or in existence.

"But it is obvious that the property purporting to be thus held in trust was the sum of money due on the note, and the mortgage was merely a security for the money.   The debt is always the principal, and the mortgage is merely the accessory.   If the debt is assigned without the mortgage, the mortgage is held in trust for the assignee. (*Parsons v. Welles*, 17 Mass. 425.)   A valid trust of chattels may be created, established and proved by mere parol declarations, as well · since the statute of frauds as before. (Hill on Trustees, 57, and cases cited.)   Here, then, is a notice of a trust which need not appear of record, and of such a character that it would not be extinguished by the union of the legal and equitable title to the land in Newell Sturtevant."

In *Smith v. Burgess*, 133 Mass. 511, the syllabus reads as follows:

"A. lent money held in trust by him for C., and took therefor a note and a mortgage of land, the note being payable to A. personally, and the mortgage, which was recorded, reciting that the consideration was paid by A., 'trustee of C.,' and conveying the land to A., 'trustee as aforesaid.'   A. afterwards borrowed money of B. and assigned the note and mortgage to him as security therefor; and the assignment of the mortgage was recorded.   The note was delivered, but not indorsed, to B.; and the words 'trustee of C.' were erased by A. before the mortgage was delivered to B.   B. did not examine the record, and his attention was not attracted to the words 'trustee as aforesaid,' and he had no actual knowledge of their existence, or of the fact that both note and mortgage represented trust funds held by A., but he knew that the money lent to A. was for his per-

sonal use. *Held*, that B. was charged with construct-
ive notice of the trust under which A. held the note
and mortgage.''

The same principle is applied in other commercial
transactions. Thus, money was deposited in a bank
in the name of ''W. W. Hamersly, H. C. Hunsber-
ger, and T. T. Apple, trustees of post No. 13, Grand
Army of the Republic.'' The bank paid the money
to Hamersly. In a suit by the post to recover it, the
court said :

"*Prima facie*, the money belonged to the plaintiffs,
as it was deposited to the credit of the trustees. The
burden of proof was, therefore, on the defendant of
showing that it did not belong to them, but that it
belonged to Hamersly, to whom it has been paid, and
the court should have instructed the jury that the
burden of proof was on the defendant, and if the evi-
dence failed to satisfy them that the money belonged
to Hamersly, their verdict should be for the plain-
tiffs.'' (*Arnold v. Macungie Savings Bank*, 71 Pa. St.
287, 290.)

Likewise the words '' agt. Glass buildings'' added
to the signature to a check were sufficient to put a
person, who received it in payment of a debt, upon
inquiry as to the authority of the drawer to use
the fund for such purpose. (*Gerard v. McCormick*,
130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234.)

The law is also well settled that a corporate record
and certificate of the ownership of stock in the name
of a person,'' trustee,'' is notice that he holds it for
some beneficiary. In *Geyser-Marion Gold Min. Co. v.
Stark*, 45 C. C. A. 467, 106 Fed. 558, 53 L. R. A. 684,
Judge Sanborn said :

''But the word 'trustee' means something. It is a
warning and declaration to every one who reads it (1)
that the person so named is not the owner of the prop-
erty to which it relates ; (2) that he holds it for the

use and benefit of another; and (3) that he has no right or power to sell or dispose of it without the assent of his *cestui que trust*. It denies the equitable ownership and beneficial interest of the party to whom it is applied, and asserts that he holds it in a representative capacity. It signifies the opposite of the word 'owner,' and means that, while the party called 'trustee' has the naked legal title, he has no beneficial right, title or interest in the property. No one who should read in stock certificates or in corporate records that one share was owned by Felix J. Stark, while another was owned by Felix J. Stark, trustee, would fail to understand that he held the former for himself and the latter for another.''

In like manner, no one who might read in the records of the office of the register of deeds an assignment of one mortgage to the Farmers' Loan and Trust Company, and an assignment of another to the Farmers' Loan and Trust Company, Trustee, could fail to distinguish the difference in capacity disclosed by the two instruments. Many analogous cases might be added to the citations already made.

That the single word ''trustee'' is of itself sufficient to import a trust relation there can be no doubt. Condensation and conciseness of description in instruments evidencing commercial transactions are to be commended, when not destructive of clearness. There can be nothing magical in the use of the word ''as,'' and the addition of the names of the beneficiaries would only make certain their number and identity. Without this a trust of some character for some one is nevertheless disclosed, which is sufficient for all purposes of the law. In *Shaw v. Spencer and others*, 100 Mass. 382, 389, 97 Am. Dec. 107, 1 Am. Rep. 115, the court held:

''Unless the word 'trustee' may be regarded as mere *descriptio personæ*, and rejected as a nullity,

there was plain and actual notice of the existence of a trust of some description. . . . This would hardly be controverted in a case where the stock was held by 'A. B., trustee for C. D.' But the effect of the word 'trustee,' alone, is the same. It means trustee for some one whose name is not disclosed. . . . The apparent difference between the two springs from the erroneous assumption that the word 'trustee' alone has no meaning or legal effect."

The conclusion, therefore, must be that the word "trustee" in the assignment to plaintiff in error was not a mere description of the person ; that it imported a representative character in the assignee ; that the record of the instrument informed all persons dealing with the land of the limited capacity of such assignee, and that the evidence introduced on the trial was sufficient to authorize a recovery by the defendant in the capacity in which it was then sued.

In Black on Judgments, it is said :

"It is not only necessary that the person sought to be bound by the former judgment should have been a party to both actions, but he must have appeared in both in the same capacity or character. 'A judgment against a party sued as an individual is not an estoppel in a subsequent action in which he sues or is sued in another capacity or character. In the latter case he is in contemplation of law a distinct person and a stranger to the prior proceedings and judgment.' This rule is one of the fundamentals of the jurisprudence of the subject. For it is found in the Roman law, as well as our own, and is also a familiar principle of the modern French and other continental systems." (Vol. 2, 2d ed., § 536.)

Hence, the judgment against the Farmers' Loan and Trust Company in the first suit did not conclude the Farmers' Loan and Trust Company, Trustee, in the second.

The cases cited by defendant in error as decisive of

the matter here determined are not so. In *Wood v. Woodson*, 100 Fed. 515, the question was whether bondholders were bound by an adjudication against their trustee in a suit to which they were not parties, and not whether the trustee had been made a party to the first suit in some particular capacity. The same point was the only one decided in both *Beals v. Illinois &c. Railroad Co.*, 133 U. S. 290, 10 Sup. Ct. 314, 33 L. Ed. 608, and *Kerrison, Assignee, v. Stewart et al.*, 93 U. S. 155, 23 L. Ed. 843. In none of these cases was any allusion made to the question here presented.

After the foreclosure mentioned the holder of the sheriff's deed mortgaged the land to the Wyandotte State Bank. The bank was made a party to the action to quiet title, and under a cross-petition foreclosed its mortgage. But a single judgment was rendered which, in its entirety, established the rights of all the parties to the suit. When the Farmers' Loan and Trust Company, Trustee, was permitted to defend, it filed a single pleading containing the preliminary statement :

"The defendant, the Farmers' Loan and Trust Company, Trustee, for answer to the petition of plaintiff filed herein, alleges and shows to the court," etc.

The bank now insists that whatever the result of the controversy between the plaintiff, Essex, and the Farmers' Loan and Trust Company, Trustee, its judgment was not disturbed because its claim was not opposed. The record conclusively shows to the contrary. The bank was served with notice of the application to open the judgment, the answer of the Farmers' Loan and Trust Company, Trustee, was filed with the application, and the second defense of the answer contained the statement that its allegations were made by way

of *cross-petition*. In the body of this defense the mortgage of the Farmers' Loan and Trust Company, Trustee, was alleged to be prior and superior to any lien, claim or interest in favor of either of the defendant's codefendants upon the land, all of which, it was stated, was well known to the plaintiff, his attorney of record, and the answering defendant's codefendants in the action ; and the answer concluded with a prayer that the mortgage of the Farmers' Loan and Trust Company, Trustee, might be adjudged a first and prior lien upon the property described, superior to any lien, claim, title, interest or estate of its codefendants upon, to, or in, the land. This was an ample challenge of the bank's claim. The order of the court was in the following language :

"It is by the court therefore ordered, adjudged and decreed that the judgment heretofore entered in this action on the 13th day of October, 1899, is hereby opened, set aside, and vacated, and said defendant is hereby allowed to defend in this action. To which ruling of the court the plaintiff, and the defendant the Wyandotte State Bank, by their attorney, C. W. Trickett, except."

Evidently the bank, at the time, considered the answer to be directed against it as well as against the plaintiff, and regarded the entire judgment as opened, and all the parties put upon their rights as they stood at the commencement of the case. In this it was undoubtedly correct, and the defendant bank will now be required to rest upon the merit of its claim.

The judgment of the trial court is reversed, with direction to enter judgment according to the views herein expressed.

All the Justices concurring.