S. W. SHATTUCK *et al*. V. CATHERINE WOLF *et al*.

No. 14,320.     (83 Pac. 1093.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Suit by a Guardian—Attainment of Majority—Discharge—Abatement—Substitution of Parties*. To secure a loan of his wards' money a guardian took a note and mortgage in his own name, with the descriptive word "guardian" annexed. Afterward, for the benefit of the wards, he brought suit to collect the note and to foreclose the mortgage, using, however, the same name and addition in designating the plaintiff and in stating the cause of action. Pending the suit the wards became of age, and the guardian was discharged. The wards moved to be substituted as plaintiffs in the suit, stating the facts and claiming title to the paper. The guardian voluntarily submitted to a trial before the court of the issues tendered by the motion, with the result that the substitution was ordered. *Held:* (1) The suit did not abate when the wards became of age and the guardian was discharged, and revivor was neither necessary nor proper. (2) The wards were entitled to be substituted as plaintiffs in the suit in place of the guardian. (3) The proceedings for substitution were properly instituted by motion; and the court had jurisdiction to hear and determine, without further pleadings and without a jury, the facts presented by the motion. (4) The guardian waived all objections to the form of the proceeding, and is concluded by the result, except for trial errors reviewable as in other civil cases.

Error from Sedgwick district court; DAVID M. DALE, judge. Opinion filed December 9, 1905. Affirmed.

*S. W. Shattuck, jr.,* for plaintiffs in error.

*Blake & Ayres,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: In 1882 S. W. Shattuck was appointed guardian of certain minor children. In 1885 he loaned the money of his wards, and took, to secure it, a note and mortgage running to "S. W. Shattuck, guardian." In 1893 he brought suit to recover the amount of the

note and to foreclose the mortgage. The petition was entitled "S. W. Shattuck, guardian, plaintiff," and was signed in the same manner.

In 1894 the guardian filed in the probate court his final account in the guardianship proceedings, in which he took credit as guardian for the money loaned, and charged himself as guardian with the note and mortgage. He also took credit as guardian for the expenses of the foreclosure suit to the date of the settlement. The wards had then become of age, and contested the conduct of the guardian; but, after a hearing, the probate court held with him, approved his accounts, found that the note and mortgage belonged to the wards, discharged the guardian and made provision for the delivery of the securities to the owners, who, however, at the time declined to receive them. The guardian took no further steps in the foreclosure suit, but Sarah G. Shattuck, a second mortgagee, who had been made a party defendant, obtained a judgment enforcing her lien, and after many years' delay caused the land to be sold.

A short time previous to the issuance of the order upon which the land was sold the former wards filed an application to be substituted as plaintiffs in the suit in place of S. W. Shattuck, guardian, reciting the fact of his appointment as their guardian, the taking of the note and mortgage in his fiduciary capacity, their arrival at the age of maturity, the guardian's discharge by the probate court, and their ownership of the paper. When the sheriff's return of the sale of the mortgaged property was filed they interposed objections to its confirmation, and later, finding the note and mortgage in the hands of the court stenographer, they filed a motion asking that the documents be turned over to them. The Shattucks objected to the consideration of the motion for substitution on the single ground that it did not contain facts sufficient to warrant the order prayed for, but the objection was overruled, and, on January 7, 1904, the three motions referred to came

on for hearing. All the parties appeared and announced themselves ready for hearing and trial, and evidence was introduced, both in support of the motions and in opposition to them. On the evidence submitted the court found in favor of the substitution of parties and directed that it be made. The hearing of the motion to confirm the sale was continued, and the note and mortgage were impounded in the possession of S. W. Shattuck, jr. (the attorney for the ex-guardian), until the further order of the court. S. W. Shattuck and Sarah G. Shattuck prosecutes error.

The plaintiffs in error argue that the guardian was a personal representative whose powers ceased upon his discharge, within the meaning of those sections of the code of civil procedure relating to the revivor of actions; that the proceedings in the district court should have been governed by the revivor statute; that the motion for substitution was in effect a motion to revive; that, because more than a year had elapsed after the powers of the guardian had ceased, the court was without jurisdiction to make the order complained of, except by consent, which was withheld; and that the general objection to the motion for substitution should have been sustained. The answer to this argument is that the suit in the district court did not abate when the wards became of age and the guardian was discharged.

Although the guardian acted for the benefit of his wards, both in taking the securities and in bringing suit to enforce them, they were drawn in such a manner that he was *prima facie* invested with full title to them, and with full authority to enforce them as his own. Descriptive words in commercial paper may become important if the matter of notice be involved (*Loan Co. v. Essex,* 66 Kan. 100, 71 Pac. 268; 1 Dan. Neg. Inst., 5th ed., § 271), but usually such words as "executor," "administrator," "trustee" and "guardian" may be disregarded and an action may be maintained by the payee in his personal right. (7 Cyc.

Shattuck v. Wolf.

563.) When suit was commenced the petition was carefully drawn to follow the language of the note and mortgage in describing the plaintiff and his cause of action. He did not commit himself to the position that the suit was brought in his representative capacity, and in legal theory it was not. (8 Encyc. Pl. & Pr. 670; 9 Encyc. Pl. & Pr. 939.) Therefore, the legal status of the case was not affected by the majority of the wards or the discharge of the guardian, and the suit might have proceeded to judgment and execution precisely the same as if only the individual name of the plaintiff had been used, had not the beneficiaries of the trust, who were not necessary parties in the first instance (Code, § 28, Gen. Stat. 1901, § 4456), intervened.

"The legal right to a promissory note, payable to a guardian in his trust capacity, remains, *prima facie*, in the obligee, notwithstanding his discharge as guardian, and he may sue thereon, unless it be shown that he has parted with the title, so that payment to him would not discharge the obligor. And the title in such case, with the right to sue, will pass, on the guardian's death, to his personal representative; nor does an action on such a note, commenced by a guardian during the ward's minority, abate because the ward has attained majority before its termination. So a guardian may properly sue for and recover money collected for her as such guardian, notwithstanding the ward's majority before the beginning of the action." (Woerner, Am. L. of Guard., § 58.)

"Where an action is prosecuted by A., guardian of B., on an instrument payable to 'A., guardian of B.,' the fact that the ward becomes of age pending the suit affords no ground to abate it." (*Gard v. Neff*, 39 Ohio St. 607.)

"If a ward attain the age of twenty-one during the pendency of the suit, he may be substituted as party plaintiff in lieu of his guardian." (*Sims, Ordinary, v. Renwick and Cobb*, 25 Ga. 58.)

Since, however, the suit was in fact prosecuted for the benefit of the wards, they were entitled, upon be-

24—72 KAN.

coming of age, to be made parties to it, to assume its management and control, and to enjoy any benefits which might be obtained by means of it.

One of the issues made by the application for substitution concerns the ownership of the cause of action, and the plaintiff, apparently in utter obliviousness of the .fact that a moral order pervades the universe which legal systems seek to emulate and aid, now. undertakes to deny that the note and mortgage belonged to his wards at all. In spite of the circumstance that, in a contest in the probate court, he proved against his wards that they were such owners, in spite of the fact that he obtained allowances out of their estate on the ground that they were such owners, and in spite of the fact that he undertook to turn over the paper to them as such owners, he now calmly asserts that his original conduct amounted to a conversion of the funds of the infants whose property he had been appointed to guard, and upon that fraud attempts to build an argument which, if valid, would result in depriving the owners of both their money and their securities. This claim of the plaintiff is stated in order that he may not be under the impression that it has been overlooked. Its legal character and conscientious quality need no elucidation. The finding of the trial court in opposition to it is sustained both by the law and by the evidence.

The refusal of the former minors to accept the note and mortgage immediately upon its tender, after their defeat in the probate court, is urged against them. What detriment the plaintiffs in error have suffered on this account so that it may lie in their mouths to deny to the applicants a right of recovery is not disclosed.

The possession of the note and mortgage by the substituted plaintiffs is not essential to a vindication of their rights, but under the evidence and the findings they are entitled to such possession, and the present custodian of the documents will doubtless yield them

Shattuck v. Wolf.

to the owners without tempting the power of the court.

Finally, it is urged that the court undertook to try and determine the title to personal property in a summary manner, upon a mere motion, without formal pleadings and without a jury, with the result that the plaintiff was turned out of court. The motion, however, distinctly asserted ownership of the note and mortgage and set forth clearly the facts relating to the claimants' title, and when the matter was called up in court for disposition the plaintiffs in error, without making any request that formal pleadings be filed, without making any suggestion that the matter should be tried as if it were of the nature of an interplea, without asking that it should go over to be heard with the merits, without any demand for a jury, and without any objection whatever to the form of the proceeding, announced themselves ready for trial and proceeded to try the title to the note and mortgage in controversy. A record was made as in any other case, and the plaintiffs in error have abundantly shown that they have a complete and unhampered right to review in this court.

Whether any other practice exists for the determination of such questions cannot be of much importance in this case. The one adopted appears to have been entirely satisfactory to the plaintiffs in error. The court had jurisdiction to enter upon the inquiry and the participating parties are effectually concluded by its result, except, of course, for trial errors reviewable as in other civil cases; and, aside from the matter of waiver and estoppel by want of objection and by consent to the trial, the question of the finality of the proceeding is to be determined by regarding the substance of what was done rather than the form under which the result was reached. (*Comm'rs of Wilson Co. v. McIntosh,* 30 Kan. 234, 1 Pac. 572.)

The judgment of the district court is affirmed.

All the Justices concurring.