No. 30,767.

MIAMI OCEAN VIEW COMPANY, *Appellant*, v. CHARLES E. PHILLIPS, *Appellee*.

(19 P. 2d 690.)

Opinion filed March 11, 1933.

*Edward T. Riling, John J. Riling,* both of Lawrence, and *James S. Summers,* of Kansas City, Mo., for the appellant.

*S. D. Scott,* of Olathe, *Charles E. McCoy, Harry Howard* and *Grant I. Rosenzweig,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a vendor to enforce perform-ance of contracts of sale of land. Defendant prevailed, and plain-tiff appeals.

A number of persons went from Kansas City, Mo., and vicinity, to Miami, Fla., before the Florida real-estate bubble burst. Twelve of them joined informally in an association to speculate in land. The members contributed to a fund of $51,000, in amounts ranging from $1,000 to $10,000. One contributor was worth two million dollars. All of them were prosperous, and each one was willing to lose what he put in. One member of the group described the ven-ture as a "lark."

Charles E. Phillips was a member of the Kansas City party, but was not a member of the syndicate. He was an experienced real-estate operator in Kansas City, and had property of his own in Florida. The members of the syndicate, who were all friends of Phillips, were willing to buy if he would act for them, and he con-sented to act, without compensation or share of profit.

The Miami Ocean View Company, of Miami, Fla., was a cor-poration which dealt in real estate. This company had sold four lots, on separate installment contracts, to Benz and Christiansen. John H. Levi, president of the Miami company, had sold another lot, on an installment contract, to the same purchasers. To sim-plify the narrative, which if expanded would reach the same result, the Miami company contracts alone will be considered.

Phillips took assignments of the Benz and Christiansen contracts for a total consideration of $135,000. Five thousand dollars were paid when preliminary negotiations were concluded, and $45,625 were paid when the assignments were effected. Incidentally, it may be noted the Benz and Christiansen contracts were dated June 24, the assignments were dated July 20, and Benz and Christiansen made a cash profit of $22,500 in less than thirty days. Benz and Christiansen had given notes for deferred installments of the sale price to them, payable at intervals of six months, as provided in the sale contracts. In the assignments to Phillips, Phillips assumed payment of these notes. When the first notes fell due, Phillips paid them, in the sum of $17,016. After that the members of the syndi-

cate lost interest in the Florida land game, and no further payments were made.

Phillips' residence was in Johnson county, Kansas. The Miami company sent an agent to Kansas who tendered a deed of each lot to Phillips, the grantee being "Charles E. Phillips, trustee." Phillips refused to accept the deeds. The Miami company then sued Phillips individually for the sum of $73,000 and interest, the unpaid portion of the purchase price of the lots, and for $2,000, taxes paid by the Miami company. The district court made findings of fact and conclusions of law relating to the capacity in which Phillips acted, and knowledge of plaintiff of such capacity, pursuant to which judgment was rendered for Phillips.

Phillips' first negotiations were with Duke Baird, who represented Benz and Christiansen. Phillips paid Baird the initial sum of $5,000, referred to above, and received from Baird an instrument which acknowledged receipt of the money and contained the terms of sale of the land. The instrument ran to "Charles E. Phillips, trustee," and was signed by "Charles E. Phillips, trustee," and by Baird. This instrument contained the following provisions:

"The full purchase price of same being One Hundred Thirty-five Thousand Dollars, to be paid as follows: Fifty Thousand Six Hundred Twenty-five ($50,625) cash, of which the above Five Thousand ($5,000) is a part, and the balance in the assumption of contracts already on lots.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"It is understood that there shall be no personal liability against Mr. Phillips in so far as the closing of this deal is concerned."

Phillips paid the remainder of the cash payment, $46,625, to Benz and Christiansen, and received from them written assignments of the contracts. Each instrument of assignment named Charles E. Phillips, trustee, as assignee. Each contract provided it should not be transferred by the vendee for any purpose without consent of the Miami company. Consent to the assignment to Charles E. Phillips, trustee, was requested, and written consent was given.

The written consent of the Miami company to assignment of each contract was at the bottom of a sheet of paper some twenty-six inches long, which originally was a printed blank form prepared specially for use by the Miami company. When the blanks were filled, the paper presented the following:

(1) The heading, "Installment Sales Contract."
(2) The contract of sale between the Miami company and Benz and Chris-

tiansen. The contract was executed by The Miami Ocean View Company, by John H. Levi, president; was attested by Charles E. Clark, secretary; and the corporate seal was affixed. The contract was also signed by the purchasers, John S. Benz and E. B. Christiansen, and their signatures were witnessed by two witnesses.

(3) The notary public's certificate, under seal, of acknowledgment of execution of the contract by the parties.

(4) The assignment of the contract to Charles E. Phillips, trustee, executed by Benz and Christiansen and their wives, whose signatures were witnessed by two witnesses.

(5) The notary's certificate, under seal, of acknowledgment of execution of the instrument by the assignors.

(6) Consent of the Miami company to the assignment, executed by The Miami Ocean View Company, by Charles E. Clark, secretary, under the company's corporate seal.

The assignment by Benz and Christiansen, consented to by the Miami company, reads:

"For value received, the undersigned do hereby bargain, sell, assign, transfer, quit-claim, and set over unto Charles E. Phillips, trustee, of the county of Dade, in the state of Florida, the installment sales contract hereto attached and made a part hereof.

"The assignee herein assumes and agrees to pay all outstanding promissory notes mentioned in said contract, and agrees to perform any and all other obligations described in said notes or contract."

Plaintiff's position is in effect this: The assignment was to Charles E. Phillips, trustee, and Charles E. Phillips, trustee, assumed payment of the notes referred to in the contract as they fell due. The word "trustee" is perfectly unambiguous. It needs no explanation, and could not be explained by extrinsic evidence. Therefore, Charles E. Phillips was incontestably a trustee. A trustee is personally liable on his contracts. If he desires to protect himself against personal liability, he must so stipulate, and the mere addition to his name of the word "trustee" will not absolve him.

The defect in the Miami company's position is that its major premise is unsound. The word "trustee" following the name of Charles E. Phillips, in the designation of the assignee of Benz and Christiansen, was ambiguous. It indicated qualified title and fiduciary relationship (*Loan Co. v. Essex*, 66 Kan. 100, 106, 71 Pac. 268), but the precise nature of the qualification and the precise nature of the relationship were not indicated.

In both legal and popular speech, the words "trust" and "trustee"

are applied to a number of widely varying relationships, such as executorship, administratorship, guardianship, partnership, agency, bailment and others, which are not true trust relationships. Indeed, the words are commonly used whenever a fiduciary relationship is involved, irrespective of whether a trust is involved. This has led courts to speak of "technical trusts," to distinguish trusts from relationships loosely called trusts because they bear more or less resemblance to trusts. There is no more technicality about a trust than there is about an agency, which is not a trust, and because one who is merely an agent is often called a trustee, and in dealings for his principal often calls himself a trustee, the description in an instrument of a party to the instrument, as "A. B., Trustee," does not definitely disclose A. B.'s capacity. He may be an agent, or he may be a trustee. The same ambiguity may arise upon a signature: "A. B., Trustee;" "A. B., Agent;" "A. B., President."

In the absence of explanation, the mere addition to the name "A. B." of the word "Trustee" or "Agent" or "President," does not forbid an inference that "A. B." is personally liable. But extrinsic evidence is admissible to show he was not acting in his individual capacity and, therefore, was not personally liable. The reason is that intention of the parties, and not a strait-jacket for expression of intention, ought to control in fixing liability. The rule applies to original parties to an instrument not sealed nor negotiable, and to any one who seeks to recover on the instrument who knew or had reason to know the facts.

Before enactment of the negotiable instruments law, the foregoing was settled law of this state, even with respect to negotiable instruments. (*Kline v. Bank of Tescott,* 50 Kan. 91, 31 Pac. 688; *Benham v. Smith,* 53 Kan. 495, 36 Pac. 997; *Grocer Co. v. Lackman,* 75 Kan. 34, 88 Pac. 527.)

In the case of *Kline v. Bank of Tescott* the syllabus reads:

"Where a note is executed by a corporation, and is signed by its president and secretary, and its directors write their names upon the back thereof as directors, before delivery, extrinsic evidence is admissible between the original parties or any subsequent holder of the note, accepting the same as collateral, with full notice of all the facts and circumstances connected with the execution and delivery thereof, not only to show that the president and secretary executed the instrument in their official capacity as officers of the corporation, but also that the directors signed the note on the back thereof solely as officers of the corporation, and to bind the corporation only."

In the opinion the court cited the case of *Metcalf v. Williams*, 104 U. S. 93, in support of the decision. In that case a check was signed "W. G. Williams, V. Pres't, E. P. Aistrop, Sec'y." In the opinion it was said:

"Where a person acts merely as agent of another, and signs papers in that capacity, that is, signs them as agent, and the party with whom he deals has full knowledge of his agency and of the principal for whom he acts, an express disclosure of the principal's name on the face of the papers, or in the signature, is not essential to protect the agent from personal responsibility." (p. 97.)

In the case of *Bank v. Trust Co.*, 107 Kan. 700, 193 Pac. 316, L. A. Mergen was sued personally on a "we promise to pay" note, signed as follows:

"The Salina Trust Company

"W. B. Middlekauff.                                    L. A. Mergen, Treas."

Mergen answered that he was authorized to sign the note for the trust company, signed purely in the representative capacity of treasurer of the corporation, and the holder of the note knew the facts. The district court overruled a demurrer to the answer, and this court affirmed the ruling. The court considered section 27 of the negotiable instruments act, which reads:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability." (R. S. 52-220.)

In the opinion the court said:

"The name of the corporation mentioned in the answer is signed to the note. It appears that L. A. Mergen signed as treasurer. One and probably the best construction of the signature is that L. A. Mergen signed as treasurer of the Salina Trust Company, although another construction may be that he signed individually, and added the expression 'Treas.' as descriptive of himself. The statute says that Mergen is not liable if he was duly authorized to sign the note for the trust company and signed in the representative capacity. The answer alleges that he was so authorized and did so sign." (*Bank v. Trust Co.*, 107 Kan. 700, 701, 193 Pac. 316.)

The decision was in accord with section 547 of the Restatement of the Law of Agency, subsection 3 of which reads:

"(3) If the name of the principal appears upon a negotiable instrument, and the agent does not appear unambiguously as a party, extrinsic evidence of an understanding that the agent shall not be a party to it is admissible as

against any holder of the instrument who has notice of the agreement or who is not a holder in due course."

In the case of *Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415, a note was signed thus:

| "F. N. Batchman, | |
| W. L. Hiss, | Members Board of |
| G. W. Hart, | Directors Sunflower |
| H. N. McGill, | Lead & Zinc Co." |
| Wm. Gagleman, | |

It was held that under section 70 of the negotiable instruments law, parol evidence was not admissible to show an understanding that the signers bound the corporation and not themselves as individuals. The section reads:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." (R. S. 52-604.)

While it is not material here, it is conceivable the section was misapplied. It does not apply to maker, drawer, or acceptor, and "some other capacity" does not refer to the distinction between personal capacity and representative capacity, but to the distinction between indorser and surety or indorser and guarantor.

It will be observed the negotiable instruments act contemplates that the name of the principal shall appear on the instrument. With respect to contracts not negotiable nor sealed, this is not necessary, and the rule applicable to such contracts is stated in subsection 2 of section 546 of the Restatement of the Law of Agency, which reads:

"(2) If the fact of agency appears in an integrated contract, not sealed nor negotiable, and there is no unambiguous expression of an intention either to make the agent a party thereto or not to make him a party thereto, extrinsic evidence may be introduced to show the intention of the parties."

Comments b. and d. to this section read as follows:

"b. The fact of agency appears if the writing indicates that one of those engaging in the transaction was acting as agent for another in so doing. For the fact of agency to appear it is not necessary that the name of the principal should be disclosed upon the document."

"d. The addition of the word 'agent' to the agent's personal signature does not thereby rebut the inference that the agent is a party to the contract so signed; such addition does, however, render the signature ambiguous and, unless the instrument as a whole is unambiguous, extrinsic evidence is ad-

missible to show the understanding of the parties, except in the case of a negotiable or sealed instrument."

In this instance there is no room for dispute that as between Phillips and the syndicate, Phillips was simply an agent giving to his friends the benefit of his expert service. While Phillips could invest the funds furnished by the syndicate, he did not have title to the money. While Phillips had power to buy and sell land, he was acting all the time on behalf of the syndicate as principal, and not as a trustee, pursuant to stated terms of a trust, created by a settlor, for benefit of a third person, the beneficiary. Phillips could subject the members of the syndicate to personal liability to third persons. A trustee may not subject the beneficiary to such liability. (Restatement of the Law of Trusts, § 11, and comments.)

There is no dispute in the evidence that Baird, who represented Benz and Christiansen, was fully informed of the capacity in which Phillips acted. After Baird had been told the facts, and before the contract between Phillips, trustee, and Baird, was signed, Baird inserted in the contract the provision exempting Phillips from personal liability in closing the deal. By express provision of the Baird contract, printed above, closing the deal included assumption of the contracts "already on the lots," and the provision exempting Phillips from personal liability governed the entire transaction between Phillips and Benz and Christiansen, including the assumption clauses contained in the assignments. The result was, there never was any assumption by Phillips, as an individual, of payment of the Benz and Christiansen notes, on which the Miami company could sue Phillips personally, and the Miami company was fully apprised of all the facts when it consented to the assignment.

When consent of the Miami company to assignment of the Benz and Christiansen contracts to Phillips, trustee, was requested, Phillips explained fully to Charles E. Clark, secretary of the Miami company, that Phillips was acting for the syndicate and not for himself. Phillips testified as follows:

"On August 18, 1925, accompanied by Mr. Richmond, who was associated with me in a business way, I called at the Miami office, that being the date of the assignment of the contract, and there met Mr. Clark, the secretary of the Miami, and one or two other parties, in their office. And I stated to him very explicitly that I was acting as trustee for a crowd of people, and I wanted him to know I assumed no personal responsibility. We discussed with his officers who our shareholders were, and told them their names, and told them the circumstances of the men who were shareholders.

"When I was talking to Clark I told him about these people being members of the syndicate for which I was acting as trustee. I mentioned to him the most important of them. . . . I furnished all [the information] he requested.

"When I paid that $46,000 at the Miami office, I had told both Baird and the Miami company many times that this money came from my syndicate people. Prior to that payment I had been at the Miami office several times, inquiring about restrictions and maturities. On those .several visits I never failed to tell them I was acting as trustee only for these shareholders. Clark and Levi both knew it."

Richmond testified as follows:

"I presonally discussed with the Miami people who the members of the Phillips Syndicate were. . . . I know I mentioned the outstanding members of the syndicate."

This testimony was not contradicted by anybody. The result was that when the Miami company approved the assignments to Charles E. Phillips, trustee, it knew Phillips was not acting for himself, but was acting as agent for a principal. Whether or not Phillips named all the members of the syndicate, it was described as the Phillips Syndicate, consisting of shareholders, the most important of whom were named. If Clark wanted a list, all he needed to do was to ask for it, and Phillips' principal was a disclosed principal.

"c. A principal is a disclosed principal if the agent has made such a manifestation or the third person has information which if pursued would enable him to distinguish the principal from all others." (Restatement of the Law of Agency, § 370, comment c.)

The burden of proof rested on the Miami company to show that Charles E. Phillips as an individual was liable on the contracts of sale by the Miami company to Benz and Christiansen. This initial burden was discharged by producing the assignments to Charles E. Phillips, trustee, containing the assumption clauses. While designation of the assignee as Charles E. Phillips, trustee, was ambiguous, the inference was that Charles E. Phillips acted in his individual capacity. This inference could be rebutted by extrinsic evidence. The burden rested on Phillips to produce rebutting evidence. He did so, and the court found in his favor.

The foregoing fully disposes of the merits of this case. Portions of the brief for the Miami company relate to some matters of fact, law and practice, which have not been specifically referred to. Each subject has been considered. It would unduly prolong this opinion

to discuss each one separately, and it must suffice to say the court regards each one either as of no importance or as lacking substantial merit.

The judgment of the district court is affirmed.